### STATE of Vermont v. Charles L. SETIEN

[795 A.2d 1135]

No. 00-548

January 7, 2002. Defendant Charles Setien appeals his conviction for larceny from the person, 13 V.S.A. § 2503, attempted assault and robbery, 13 V.S.A. §§ 9, 608, and as a habitual offender, 13 V.S.A. § 11, claiming that (1) he was denied his right to testify because the trial court ruled in limine that the State could impeach defendant with evidence of his past criminal convictions; (2) he was convicted of two crimes but committed only one; (3) the habitual offender conviction was improperly based on his change of plea in two cases for which no transcripts were available; and (4) the jury's determination that defendant was

a habitual offender may not have been unanimous. We affirm:

Defendant's convictions arose from events occurring in Barre, Vermont on March 15, 1999. On that date, Viola and Victor Aldrich, both in their seventies at the time, were home watching television when defendant entered their home looking for Victor. Victor and Viola collected, bought and sold coins for many years, and kept some of their collection at home. Defendant told Victor, who was disabled and could not get out of his chair, that he wanted to buy some coins. Victor told defendant that they did not sell coins from their home at night. Although Victor told defendant that the coins were at the bank in a vault, defendant insisted that the couple had coins in their home. Viola became nervous, called to her grandson who lived upstairs, and asked him to call the police.

Meanwhile, the couple gave defendant permission to use their telephone so he could call for a ride. After hanging up the phone, defendant again tried to persuade Victor to sell him some coins. Victor refused. Defendant then ordered the couple to open their safe, threatening to kill them with a gun he said he possessed if they did not comply. When the couple continued to refuse defendant's demands, he reached under the top of Viola's nightgown and ripped off a chain and a gold coin she wore around her neck, saying, "I will have one gold piece anyway." Defendant also took some foreign coins from a glass candle holder in the couple's home, and then he left. He was later arrested after a coin dealer identified him as the person who sold him the coin stolen from Viola.

Although neither Victor nor Viola identified defendant as the perpetrator immediately, they were familiar with him because he had worked on their home some time previous to March 15. At that time, the couple allowed defendant to eat lunch in their home, and they discussed coin collecting with him. Defendant has a distinctive lisp, but again neither Victor nor Viola mentioned that to the police right after the crime took place. They also failed to identify him by name after a photo lineup. Eventually, the couple were able to tell the police that defendant was the person who entered their home that evening. Defendant was thereafter convicted, and he appealed to this Court.

Defendant first argues that he was denied his right to testify because the court ruled unfavorably on his motion in limine to exclude impeachment evidence consisting of his prior convictions for false pretenses and attempt to defraud. In response, the State argues that defendant failed to preserve this claim for review because he did not testify at trial; therefore, the evidence was never admitted. The State asks us to adopt the United States Supreme Court's decision in *Luce v. United States*, 469 U.S. 38 (1984), requiring a criminal defendant to testify in order to raise and preserve for appellate review a claim of improper impeachment through evidence of prior convictions. Because the record in this case is sufficient for us to find no abuse of discretion in the court's in limine ruling, we do not reach the State's request regarding *Luce v. United States*.

Whether to admit evidence of prior convictions for impeachment purposes is within the trial court's discretion. *State v. Emerson*, 149 Vt. 171, 178, 541 A.2d 466, 470 (1987). The standard for exercising that discretion appears in V.R.E. 609 as well as *State v. Gardner*, 139 Vt. 456, 433 A.2d 249 (1981). Rule 609(a)(1) allows the State to attack a criminal defendant's credibility with evidence of a prior conviction for a crime "whose statutory elements necessarily involve untruthfulness or falsification," unless the court determines that the probative value of such evidence is "substantially outweighed by the danger of unfair prejudice." V.R.E. 609(a)(1). Although subsection (a)(1) of Rule 609 shows a preference for admitting prior convictions involving

falsification or untruthfulness, 1989 Reporter's Notes, V.R.E. 609, the court must assess probative value and prejudice in accordance with a variety of factors set out in *State v. Gardner*. See *State v. Ashley*, 160 Vt. 125, 129, 623 A.2d 984, 986 (1993) (failure of trial court to adequately consider *Gardner* factors is grounds for reversal). Those factors include the nature of the proceeding, the nature of the crime to be used for impeachment, the length of defendant's criminal record sought to be admitted, the age of the prior convictions, defendant's age and circumstances, and the relative importance of defendant's testimony and the State's need to use the prior convictions to impeach. *Gardner*, 139 Vt. at 460-61, 433 A.2d at 251-52.

In this case, the State argued below that the credibility of its only two eyewitnesses, Viola and Victor Aldrich, was essential to its case. The need to impeach defendant's credibility, should he decide to testify and deny he was present in the Aldrich home on March 15, was therefore critical. Defendant responded that the State had a strong circumstantial case against him, defendant was the only witness who could possibly counter the State's numerous witnesses, and the prior crimes would be unduly prejudicial because they were similar to the crimes at issue in the present case. On appeal, defendant's argument centers on the trial court's alleged failure to adequately consider his need to testify. Defendant never made an offer of proof concerning what his testimony might have been, however, had he decided to testify. Also, defendant does not dispute that false pretenses and attempt to defraud are crimes involving untruthfulness, and therefore are highly probative of credibility.

We agree with the trial court that the probative value of the prior convictions was not substantially outweighed by the danger of unfair prejudice in light of the defense's expected attack on the ability of the elderly eyewitnesses to recall and correctly perceive the events, and to recognize the perpetrator. At trial, defendant's cross-examination of the Aldrichs focused on their failure to immediately identify defendant when the police arrived at their home, Viola's failure to identify defendant by name during a photo array, Viola's ability to see and to correctly recall what happened, Victor's apparent failing memory, and the fact that the couple knew defendant from previous encounters.

Defendant is correct that the State offered other incriminating evidence implicating defendant, but that evidence was primarily circumstantial. Moreover, defendant vigorously impeached that evidence where possible. The credibility of the State's only eyewitnesses was therefore crucial to the State's case. Under the circumstances, there was a greater need to explore all avenues which would help the jury determine whether to believe the victims or defendant, assuming defendant decided to testify. See *State v. DeJoinville*, 145 Vt. 603, 606, 496 A.2d 173, 175 (1985) (where outcome largely depends on credibility of witnesses, Court recognizes greater need to use prior convictions to help jury determine which witness is more believable). The trial court exercised its discretion appropriately, particularly where defendant failed to make an offer of proof supporting his asserted need to testify in his own defense.

Defendant next argues that if he committed any offense, it was a single crime and he was erroneously charged and convicted of two. He believes only one crime occurred because his acts all took place in a single location, within a few minutes and with a partially fulfilled, single purpose — to steal gold coins. There were two victims on the evening of March 15, 1999, however — Victor and Viola Aldrich — and the crimes against each were supported by different facts. Cf. *Jackson v. State*, 432 S.E.2d 649, 650-

51 (Ga. Ct. App. 1993) (two separate robberies occurred during same course of events where property stolen from pawn shop in front of shop's owner and property taken from person of owner's wife); *Hatcher v. State,* 410 N.E.2d 1187, 1190 (Ind. 1980) (three robberies occurred because defendant and his accomplice took property from three separate victims even though in same course of events). Defendant committed larceny from the person of Viola Aldrich by ripping a necklace with a coin off of her neck.* See 13 V.S.A. § 2503 (larceny from the person means stealing or attempting to steal "from the person and custody of another"). The second crime was the attempted assault and robbery of "Victor and/or Viola Aldrich," as the State provided in its information, by threatening to shoot them to gain access to their safe and its contents. See 13 V.S.A. § 608 (defining robbery) and § 9 (defining attempt). After the jury rendered its guilty verdict, the court asked each juror to identify the victim of defendant's attempted assault and robbery. Each juror answered that defendant victimized both Victor and Viola Aldrich. Thus, Victor was a second victim that evening of a different crime with different facts than the larceny offense against Viola. Defendant's two convictions were therefore proper.

---

* Although the State's information charging larceny from a person did not identify the victim by name, it expressly identified the item stolen as "a necklace with coin." Defendant's claim that the State sought to convict him of a crime not charged by failing to name Viola Aldrich as the victim of defendant's unlawful act on March 15, 1999 is meritless where the underlying facts, which were set forth in a probable cause affidavit, left no doubt as to the "person" from whom defendant stole that evening.

Defendant also challenges his conviction as a habitual offender under 13 V.S.A. § 11, which authorizes the trial court to impose a sentence of up to life imprisonment if the jury concludes defendant was convicted of three prior felonies, including attempts to commit felonies. 13 V.S.A. § 11. The State offered six prior felony convictions: burglary in 1981, grand larceny in 1985, felony retail theft in 1988, attempt to defraud in 1993, false pretenses in 1994, and escape in 1997. The court prohibited the State from using the 1985 grand larceny and 1997 escape convictions because the transcripts of the change-of-plea hearings in those cases showed noncompliance with V.R.Cr.P. 11 by failing to set forth factual bases for the pleas. Defendant also challenged the use of the 1981 burglary and 1988 felony retail theft convictions because no transcripts for the change-of-plea hearings in those cases were available. The court denied defendant's challenge to those convictions, and he contests that ruling on appeal.

Because convictions are presumptively valid, defendant has the burden to prove that his prior convictions based on guilty pleas were not valid. *State v. Riefenstahl,* 172 Vt. 597, 599, 779 A.2d 675, 678-79 (2001) (mem.). Transcripts are one way to prove that a plea was not knowing and voluntary, and thus the conviction was invalid; but defendant could also challenge the two prior convictions by testifying that irregularities in the plea proceeding demonstrate the convictions' invalidity. See *State v. Brown,* 165 Vt. 79, 88, 676 A.2d 350, 355-56 (1996) (defendant need not challenge his prior convictions through court records alone). Defendant argues, however, that a transcript from one of defendant's other excluded convictions suggests that the 1981 plea-based conviction for burglary was invalid because the same judge presided over both proceedings. Defendant also asserts that doubt exists about his 1988 felony retail theft conviction

because there is no record that he was counseled about his risk of being found a habitual offender if he were later convicted of another crime. Those contentions do not diminish defendant's obligation to make some showing that the prior convictions were invalid. He "must do more than point to an ambiguous or incomplete record" by producing some evidence that his prior pleas did not meet the requirements of the law. *State v. Delisle*, 171 Vt. 128, 132, 758 A.2d 790, 794 (2000). Moreover, a guilty plea is not unknowing and involuntary simply because defendant did not receive advice about the consequences of recidivism. *State v. Pilette*, 160 Vt. 509, 511-12, 630 A.2d 1296, 1297 (1993).

We also reject defendant's suggestion that he should not bear "the severe burden imposed for the unavailability of transcripts" because the State did not bring the habitual offender charge at one of his prior felony events when transcripts might have been available. It is defendant's burden to show that his prior guilty pleas and consequent convictions were obtained improperly. *Riefenstahl*, 172 Vt. at 599, 779 A.2d at 678-79. Defendant cites no case or other legal authority directing the State to bring habitual offender charges at the earliest opportunity. When to charge defendant as a habitual offender is a matter of prosecutorial discretion. Significantly, defendant does not allege that he entered pleas in the cases he contests unknowingly and involuntarily, or that there were other defects in those convictions. Accordingly, we find no error in the trial court's denial of defendant's request to exclude from the jury's consideration the two convictions for which defendant could not obtain transcripts.

Lastly, defendant seeks reversal of his habitual offender conviction claiming that the jury's verdict may not have been unanimous. Defendant asserts the court failed to inquire of each juror which of the four prior convictions they based their verdict upon. The record leaves no doubt that the jury unanimously determined defendant was a habitual offender based on all four convictions the State sought to prove.

The transcript shows the trial court asked the jury if it reached a determination on whether each conviction the State presented — attempt to defraud, false pretenses, burglary, and retail theft — were felonies and that defendant was the person who committed the offenses. The jury responded affirmatively to each of the four convictions separately, responding that defendant "was the one who did it." The court then polled each juror individually asking, "do you agree with each one of those decisions," and enumerated each conviction by number. Each juror again responded affirmatively. Immediately thereafter, the State, apparently concerned that the jury's response that defendant "was the one who did it" might not satisfy the requirement that they find he was *convicted* of each offense, requested that the court inquire whether the jury agreed that defendant "had been convicted of three or more felonies before the conviction today?" The jury responded, "Yes." The court then asked, "And does each member of the jury agree with that?" The jury as a group again answered, "Yes." Based on this record, there is no uncertainty about the unanimity of the jury's verdict on all four prior convictions.

*Affirmed.*

Motion for reargument denied February 8, 2002.