2008 VT 122

## State of Vermont v. Seth Amidon

[967 A.2d 1126]

No. 07-403

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 29, 2008

*Christina Rainville*, Chief Deputy State's Attorney, Bennington, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Rebecca Turner*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** In this appeal, defendant argues that the trial court abused its discretion when it misapplied the law and ruled

that statements made during the course of plea negotiations were admissible for impeachment purposes should he testify at trial. We agree that the ruling was error under Vermont Rule of Criminal Procedure 11 and Vermont Rule of Evidence 410. Defendant also claims that the trial court's ruling violated his privilege against self-incrimination and his rights to testify and to a fair trial. We reverse his conviction for sexual assault in violation of 13 V.S.A. § 3252(a)(1)(A) on rule grounds and do not reach defendant's constitutional claims.

¶ 2. The relevant facts are as follows. Defendant was charged with sexual assault for having nonconsensual sexual intercourse with the victim in July 2006 at her apartment in Bennington, Vermont. Defendant and the victim were friends who regularly had sexual intercourse with one another over the course of several years. At the time of his arrest, defendant admitted having sexual intercourse with the victim on the date in question, but claimed that the sex was consensual.

¶ 3. Defendant entered a plea of not guilty at his arraignment. Subsequently, defendant reached a plea agreement with the State and executed a Notice of Plea Agreement setting forth its terms. After engaging in a full colloquy with defendant, the trial court accepted his plea, finding it to have been knowingly and voluntarily made. The court ordered that a presentence investigation (PSI) report be conducted, and reserved its decision as to whether to accept the sentencing recommendation in the plea agreement until after reviewing the report.

¶ 4. In the course of conducting the PSI, an officer from the Department of Corrections conducted a taped interview of defendant. The officer asked defendant about what happened on the date of the alleged incident. The PSI report contains the officer's version of what defendant said in reply:

> I . . . started kissing her and stuff like that. One thing led to another and she basically told me that she did not want to have sex with me. I never physically harmed her or nothing like that. She just kept telling me no, she didn't want to have sex with me. I didn't take no for an answer. That's how it ended up. . . .

(Internal quotation marks omitted.) The PSI report was filed with the trial court in March 2007. After reviewing the report, the trial court declined to accept the recommended sentence, and defendant was allowed to withdraw his guilty plea.

¶ 5. The case was scheduled for a jury trial. Before the case went to trial, the State notified defense counsel of its intention to use statements defendant made in the recorded PSI interview in its case-in-chief as well as to impeach defendant should he take the stand and testify that the victim consented to the sexual intercourse. A dispute arose between defendant and the State as to whether either use was permissible, and the trial court held a hearing to settle the question in limine.[1]

¶ 6. At the hearing, the State argued as follows:

> I think just the details of the confession are important. . . . In the tape recorded confession, the defendant says, I think a total of five times, that she said no, she said no, and I would not take no for an answer. It's an absolute clear confession said five times over the course of the tape. It would be extremely important and relevant for our case whether if for impeachment, or the case in chief, because this is a case involving consent and it is an absolute confession . . . . [I]t goes to the very heart, the very crux of the case . . . .

Defendant argued that statements made in connection with a plea agreement were inadmissible under V.R.Cr.P. 11 and V.R.E. 410. Defense counsel agreed that the admission of defendant's statements in the State's case-in-chief would be "devastating," and argued that to allow the statements to be admitted for purposes of impeachment would have "a chilling effect" on defendant's decision whether to testify. Initially, the trial court ruled that the statements were not admissible either in the State's case-in-chief or for impeachment. However, after reviewing our decision in *State v. Brunelle*, 148 Vt. 347, 534 A.2d 198 (1987), the court modified its decision, ruling that the statements could be used for impeachment "if the defendant were to testify and during direct examination specifically contradict[] such statements and such statements bear directly on the elements of the charged offense." The court further opined that "[the] statements would certainly

---

[1] Black's Law Dictionary defines "in limine" as "raised preliminarily." Black's Law Dictionary 803 (8th ed. 2004). "We use the term in a broad sense" to refer to any determination by the court, "whether made before or during trial," ruling on the admissibility of evidence "before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

seem to be impeaching evidence for [defendant] to testify that it was consensual."

¶ 7. At trial, the State called two witnesses — the victim and the investigating officer. The State did not offer any evidence of defendant's PSI statements. Defense counsel cross-examined the State's witnesses, but defendant did not present any evidence of his own, nor did he testify. Rather, at the close of the State's case, defendant renewed his objection to the court's in-limine ruling and rested his case. The jury convicted defendant as charged, and this appeal followed.

¶ 8. As a threshold matter, we reject the State's argument that the record is insufficient for appellate review because defendant did not open the door to the impeachment evidence by testifying. The State relies on *Luce v. United States*, 469 U.S. 38 (1984), for this position. In *Luce*, the defendant — who had been indicted on charges of conspiracy and possession of a controlled substance with the intent to distribute — had moved in limine for a ruling precluding the use of a prior conviction for possession of a controlled substance to impeach him should he elect to testify. *Id.* at 39. The trial court ruled that the defendant's prior conviction fell within the category of permissible impeachment evidence under Federal Rule of Evidence 609(a) and could be used to impeach the defendant in the event that he took the stand and denied any prior involvement with drugs. *Id.* at 39-40. The defendant chose not to testify, was convicted, and appealed, arguing that the in-limine ruling was an abuse of discretion. *Id.* at 40.[2]

¶ 9. On review, the *Luce* Court noted that, had petitioner testified and been impeached by evidence of a prior conviction, the trial court's decision to admit the impeachment evidence would have been reviewable on appeal along with any other claims of error. *Id.* at 41. Because defendant declined to testify, however,

---

[2] At the time *Luce* was decided, F.R.E. 609(a) provided as follows:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant or (2) involved dishonesty or false statement, regardless of the punishment.

the Court held that appellate review of the trial court's F.R.E. 609(a)(1) decision was unavailable. *Id.* In doing so, the Court was guided by two major concerns.

¶ 10. The first of these concerns was the extent to which "reviewing court[s] [are] handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Id.* The Court reasoned that F.R.E. 609(a)(1) decisions are based on a fact-specific balancing of the conviction's probative value against its prejudicial effect, and that this balancing in turn depends on the specific nature of the testimony that triggers use of the conviction. *Id.* Without hearing the defendant's testimony, the Court continued, the trial court cannot adequately perform that balancing test, and a reviewing court similarly cannot evaluate the trial court's performance. *Id.*; see also *id.* at 43 (Brennan, J., concurring) ("The careful weighing of probative value and prejudicial effect that Rule 609(a) requires of a district court can only be evaluated adequately on appeal in the specific factual context of a trial as it has unfolded.").

¶ 11. The Court was also concerned with the difficulty of determining, in the F.R.E. 609(a) context, whether the trial court's ruling actually harmed defendant. *Id.* at 41. Stressing the fact that in-limine rulings under 609(a)(1) are subject to change as the factual context unfolds throughout trial, the Court dismissed as speculative any possible harm flowing from the initial in-limine ruling. *Id.* at 41-42. The Court concluded that it would be a matter of conjecture whether the defendant would have testified absent the adverse ruling, whether the trial court would have admitted the impeachment evidence, or whether the government would even have sought its admission. *Id.* at 42. Finally, the Court noted that, if the defendant did not testify, a reviewing court would be hard put to make a determination as to "the impact any erroneous impeachment may have had in light of the record as a whole," *id.*, or — in other words — whether any error was "harmless."

¶ 12. We have thus far neither expressly adopted nor rejected *Luce*, at least in the context of the preservation of nonconstitutional claims. See *State v. Martin*, 2007 VT 96, ¶ 47, 182 Vt. 377, 944 A.2d 867 (declining to reach preservation question under *Luce*); *State v. Keiser*, 174 Vt. 87, 98-99, 807 A.2d 378, 388 (2002) (citing our decision in *State v. Koveos*, 169 Vt. 62, 732 A.2d 722 (1999), as "similar [to] that reached in *Luce*," but declining to

follow a federal extension of *Luce*); *State v. Setien*, 173 Vt. 576, 577, 795 A.2d 1135, 1137-38 (2002) (mem.) (declining to reach preservation under *Luce* because record sufficient to find no error); *State v. Emerson*, 149 Vt. 171, 178 n.2, 541 A.2d 466, 470 n.2 (1987) (declining to address the applicability of *Luce* because the question was not argued or briefed by the parties); *Brunelle*, 148 Vt. at 356, 534 A.2d at 204 (declining to adopt *Luce* with regard to impeachment by "constitutionally suppressed evidence").[3]

¶ 13. We note that our sister states have not uniformly adopted *Luce*. See *Warren v. State*, 124 P.3d 522, 527 (Nev. 2005) (collecting cases and reporting the adoption of *Luce* by courts in Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Idaho, Illinois, Michigan, North Carolina, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, and Wyoming, and the rejection of *Luce* by courts in Alaska, Minnesota, New Jersey, New York, Oregon, and Pennsylvania); see also *Commonwealth v. Crouse*, 855 N.E.2d 391, 397 (Mass. 2006) (declining to adopt *Luce*). However, as the legal and factual circumstances of this case are sufficiently dissimilar to *Luce* as to render both its holding and reasoning inapplicable here, we need not determine today into which jurisprudential camp we fall. We decline to adopt the rule of *Luce* as governing the issue in this case because neither of the concerns that guided the *Luce* Court is implicated here.

¶ 14. First, we sit in review not of a trial court's discretionary decision on a subtle evidentiary question requiring the careful fact-specific weighing of probative value versus prejudicial effect, but of a purely legal question as to whether a particular ruling is permissible generally under statutory and constitutional guarantees. This consideration alone counsels against the application of *Luce*. In *United States v. Velez*, 354 F.3d 190 (2d Cir. 2004), the defendant made partial admissions of guilt in a proffer session

---

[3] *Luce* is by its own terms likely inapplicable to this case. In *Luce*, the Court distinguished *Brooks v. Tennessee*, 406 U.S. 605 (1972), and *New Jersey v. Portash*, 440 U.S. 450 (1979) — cases in which the Court reviewed Fifth Amendment challenges to state-court rulings that operated to dissuade defendants from testifying — on the basis that the questions at issue in those cases "reach[ed] constitutional dimensions." *Luce*, 469 U.S. at 42-43. Here, two of defendant's claims directly implicate constitutional guarantees, while his third claim — the only claim we reach — at least arguably approaches the boundaries of such "constitutional dimensions." *Id.*; see also *Brunelle*, 148 Vt. at 356, 534 A.2d at 204 (relying on *Luce*'s "constitutional dimensions" language in declining to adopt its holding).

after signing an agreement waiving the otherwise-applicable prohibition on their use at trial.[4] The trial court ruled in limine that certain anticipated defense arguments and witness testimony would open the door to the admission of the defendant's proffer statements. The defendant did not introduce the testimony in question, was convicted, and appealed, arguing that the trial court's implicit finding that the waiver provision in the proffer agreement was enforceable was constitutional error. The United States Court of Appeals for the Second Circuit declined to apply *Luce* to the question of whether the defendant had preserved his challenge to the waiver provision notwithstanding his failure to offer the triggering testimony. The court explained:

> Unlike the claim in *Luce*, defendant in the instant case contends that the waiver provision is unenforceable and unconstitutional as a general matter, not that the trial court erred in its application of an evidentiary rule's balancing test. . . . The record and its fact-specific contents are irrelevant to the consideration of defendant's broad assertion that proffer agreements cannot constitutionally contain provisions that waive a defendant's exclusionary privileges with regard to evidence or argument beyond his own testimony. Accordingly, we proceed to consider the claim.

*Id.* at 194. The court continued:

> Even if defendant were challenging the District Court's *in limine* ruling that his proffer statements would be admissible in response to certain of the anticipated defense evidence and argument, we would still not read *Luce* as dictating that we refuse to hear the claim. That is because the District Court's ruling in the instant case does not depend on the fact-specific balancing of prejudicial effect and probative value that was influential to the *Luce* Court.

*Id.* at 194 n.4. Likewise, in this case, our evaluation of defendant's claim that statements made in connection with his plea agreement are generally inadmissible for purposes of impeachment does not

---

[4] According to the *Velez* court, "proffer sessions" fall under the general umbrella of plea negotiations. 354 F.3d at 194.

depend on a fact-specific balancing of prejudicial effect against probative value. Thus, the first concern of *Luce* does not counsel us against entertaining defendant's claim.

¶ 15. Neither need we resort to speculation and conjecture to conclude that the trial court's erroneous ruling harmed defendant. On this record, the State's intent to seek admission of defendant's statements, as well as the exact nature of those statements, was clear, and the potential importance of the in-limine ruling to defendant's decision not to testify is manifest.[5] In this case, the contested evidence did not concern a collateral matter such as a prior conviction, but consisted of statements by defendant directly bearing on the only element at issue in his trial — lack of consent. And, while the trial court certainly retained the discretion to change its in-limine ruling as the trial unfolded, the court rightly recognized that defendant's statements fit squarely within its ruling, noting that "[the] statements would certainly seem to be impeaching evidence for [defendant] to testify that it was consensual." As there were no witnesses to the event, nor any physical injuries sustained, the State's evidence on the element of consent consisted only of the victim's testimony. On this record, it is reasonable to assume that the State would seek to use defendant's words against him should he take the stand. Finally, defendant's statements were probative of the only element at issue in trial — lack of consent. It is difficult to conceive of a case in which their erroneous admission could be harmless in light of the record as a whole.[6]

---

[5] The State claims that "there is no way to know which statements, if any, the State would have tried to use for impeachment," and notes that neither a transcript of the PSI interview nor a certain list the State compiled of statements it intended to use for impeachment is in the record. The State uses this claim to support its argument that the record is inadequate for review. However, we find the State's offer of proof, quoted at length above, to be sufficiently detailed for purposes of our review. Moreover, the quotations of defendant contained in the PSI report — which, of course, are also in the record — are sufficiently similar to the State's summary so as to bolster our confidence in the accuracy of the State's representation.

[6] We note that it is the clarity with which the evidentiary question here was presented as well as the definiteness of the trial court's ruling that distinguishes this case from *Koveos*, 169 Vt. 62, 732 A.2d 722. In *Koveos*, we found the record insufficient to review a trial court's "advisory" V.R.E. 404(b) rulings because the rulings essentially consisted of a series of answers to hypothetical questions posed by defense counsel as to what evidence would open the door to impeachment by

¶ 16. As this record is adequate for our review, we will address defendant's claims. Defendant first argues that admission of his PSI statements was prohibited by V.R.Cr.P. 11 and V.R.E. 410. The trial court's decision on the in-limine motion depended on its construction of those rules. The interpretation of procedural rules is a question of law which we review de novo. See *Bessette v. Dep't of Corr.*, 2007 VT 42, ¶ 6, 182 Vt. 1, 928 A.2d 514. In interpreting rules of procedure and evidence, we employ tools similar to those we use in statutory construction. That is to say that when construing a rule, we consider its plain language and the purpose it was designed to serve. See *Casella Constr., Inc. v. Dep't of Taxes*, 2005 VT 18, ¶ 5, 178 Vt. 61, 869 A.2d 157. Moreover, when our rule is identical to its federal counterpart, we look to federal cases interpreting the federal rule for guidance. *State v. Danforth*, 2008 VT 69, ¶ 15, 184 Vt. 122, 956 A.2d 554.

¶ 17. V.R.Cr.P. 11(e) sets out the procedures for plea agreements, and both V.R.Cr.P. 11(e)(5) and V.R.E. 410 govern the admission of pleas, plea discussions and related statements. V.R.Cr.P. 11(e), titled "Plea Agreement Procedure," provides:

> (1) *In General.* The prosecuting attorney and the attorney for the defendant . . . may engage in discussions with a view toward reaching an agreement . . . .

> (2) *Notice of Such Agreement.* If a plea agreement has been reached by the parties . . . the court shall require the disclosure of the agreement in open court at the time the plea is offered. . . . Thereupon the court, before entry of the plea, may accept or reject the agreement, or defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. . . .

> . . . .

certain prior bad acts. *Id.* at 71, 732 A.2d at 728-29; see also V.R.E. 404(b) (governing admissibility of prior bad acts). If questions are not squarely presented to or definitively ruled upon by the trial court, as in *Koveos*, appellate review is unavailable. Cf. *Rosenfeld v. Basquiat*, 78 F.3d 84, 91 (2d Cir. 1996) (entertaining the appeal of an in-limine ruling on the admissibility of testimony under a Dead Man's Statute without requiring a renewed objection at trial because "[u]nlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound," the issue was squarely presented to the trial court and was essentially legal, and the trial court's ruling was explicit and definitive).

(4) *Rejection of Plea Agreement.* If the court rejects the plea agreement or defers decision upon it, the court shall . . . afford a defendant who has already pleaded the opportunity to then withdraw his plea . . . .

(5) *Inadmissibility of Pleas, Plea Discussions, and Related Statements.* Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas;

(D) any statement made in the course of plea discussions with an attorney for the prosecution which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

V.R.Cr.P. 11(e). V.R.E. 410 provides slightly broader protection, excluding from admission against a defendant "any statement made in the course of any proceedings under [V.R.Cr.P. 11] or comparable state or federal procedure regarding [a guilty plea that is later withdrawn]." V.R.E. 410(3).

¶ 18. Defendant contends that his PSI statements fall under the protection of both rules by virtue of V.R.Cr.P. 11(e)(5)(C), which prohibits admission of "any statement made in the course of any proceedings under this rule regarding [a guilty plea that is later withdrawn]." V.R.Cr.P. 11(e)(5)(C). The plain language of V.R.Cr.P. 11(e) and V.R.E. 410 supports defendant's position. First, as defendant notes, neither of the rules contains an exception for

impeachment purposes. Further, given that V.R.Cr.P. 11(e)(2) specifically provides that a PSI may be conducted before acceptance of the plea as a part of the "Plea Agreement Procedure," statements made in PSI interviews conducted prior to the court entering judgment on the plea constitute statements made in the course of proceedings under the rule. See Black's Law Dictionary 1241 (8th ed. 2004) (defining "proceeding" as broadly as "[a]n act or step that is part of a larger action"). Moreover, when a court reserves its acceptance or rejection of a plea pending review of a PSI, statements made during the PSI certainly "regard" the plea as well as sentencing.

¶ 19. That there is no general impeachment exception to this bar to admissibility is consistent with the drafters' intent. Although they do not address the impeachment-exception issue expressly, the Reporter's Notes clearly state that V.R.Cr.P. 11 and V.R.E. 410 were intended to be uniform with their federal cousins. See generally Reporter's Notes, V.R.Cr.P. 11; Reporter's Notes, V.R.E. 410; see also State v. Peterson, 2007 VT 24, ¶ 10, 181 Vt. 436, 923 A.2d 585 ("Our conditional plea procedure is based on Federal Rule of Criminal Procedure 11."). Specifically, the Reporter's Notes to the 1977 amendment to V.R.Cr.P. 11, which adopted the new language of the recently amended Federal Rule of Criminal Procedure 11(e)(6), "makes clear the uniformity of the Vermont and Federal rules on this important question of admissibility." Reporter's Notes, V.R.Cr.P. 11, 1977 Amendment. Thus, the legislative history of F.R.Cr.P. 11 and F.R.E. 410, which are consistent with one another in all material respects, is instructive on this point.

¶ 20. As the United States Court of Appeals for the Second Circuit noted in United States v. Lawson, 683 F.2d 688, 692 (2d Cir. 1982), the legislative history of the 1975 amendments to F.R.Cr.P. 11 and F.R.E. 410 provides "unusually clear" guidance as to whether statements made in connection with plea proceedings were intended to be used for impeachment purposes. As the Lawson court recounted, that history shows that while crafting the 1975 amendments to F.R.Cr.P. 11 and F.R.E. 410, Congress debated whether statements made in the course of plea proceedings should be available for later admission to impeach a defendant. Id. at 692-93. The Senate sought to specifically permit such use, while the House opposed the exception. Id. The House view prevailed. Id. We view this legislative history as conclusively

demonstrative of Congress' intent to prohibit the use of statements falling under the general protection of F.R.Cr.P. 11 and F.R.E. 410 for impeachment.[7]

¶ 21. Courts interpreting F.R.Cr.P. 11 and F.R.E. 410 and similarly drafted state rules have declined to fashion a general impeachment exception to the rules' evidentiary bar. The United States Supreme Court has recognized that the federal rules "give a defendant the right not to be impeached by statements made during plea discussions." *United States v. Mezzanatto*, 513 U.S. 196, 200 n.2 (1995).[8] State courts interpreting rules similar in all material respects to F.R.Cr.P. 11 and F.R.E. 410 — and thus to our rules — have adopted the same position. See *State v. Vargas*, 618 P.2d 229, 231 (Ariz. 1980); *Landrum v. State*, 430 So. 2d 549, 550 (Fla. Dist. Ct. App. 1983); *State v. Robledo-Kinney*, 615 N.W.2d 25, 30 (Minn. 2000); *State v. Trujillo*, 605 P.2d 232, 234-35 (N.M. 1980); *Mann v. State*, 605 P.2d 209, 211 (Nev. 1980); *Gillum v. State*, 681 P.2d 87, 89 (Okla. Crim. App. 1984); *Bowie v. State*, 135 S.W.3d 55, 65 (Tex. Crim. App. 2004); *State v. Smith*, 438 S.E.2d 554, 561 (W. Va. 1993); *State v. Mason*, 393 N.W.2d 102, 104 (Wis. Ct. App. 1986).

■ ¶ 22. In sum, we hold that statements made during the course of a plea-related PSI are inadmissible against a defendant when the plea is later withdrawn, whether those statements are offered for impeachment or for their substance. The Supreme Court of Minnesota, interpreting its similarly worded rules, agrees. In *State v. Jackson*, that court reasoned that under Minnesota's Rule of Evidence 410:

---

[7] We also note that the original F.R.E. 410 included an impeachment exception. See Act of Jan. 2, 1975, Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933 (1975). The fact that Congress intentionally excised it when the rule was promptly amended, see Act of Dec. 12, 1975, Pub. L. No. 94-149, § 1(9), 89 Stat. 805, 805 (1975), lends further support to our conclusion that Congress intended to prohibit the use of such statements for impeachment.

[8] The State's argument that under *Mezzanatto*, 513 U.S. at 201, defendant waived his V.R.Cr.P. 11 rights by pleading guilty need not detain us long. In *Mezzanatto*, the United States Supreme Court held that the right not to be impeached by statements made during plea negotiations was waivable, and upheld a conviction where the defendant's statements in plea negotiations were used against him for impeachment because the defendant had expressly waived his rights in a written waiver agreement. Here, defendant did not expressly waive his V.R.Cr.P. 11(e)(5) rights in writing.

in-court statements, as well as the plea itself, are to be treated as if never made when the guilty plea is withdrawn. This being so, it seems to us that other statements made out of court but as part of the presentence investigation are likewise inadmissible. Both the in-court and the out-of-court statements are integral parts of the plea proceedings and cannot realistically be separated.

325 N.W.2d 819, 822 (1982).

¶ 23. Our reading of the rules is sound from a policy perspective as well, as it supports the "promotion of disposition of criminal cases by compromise." F.R.E. 410 advisory committee's note, *reprinted in* 46 F.R.D. 161, 241 (1969); see also Reporter's Notes, V.R.Cr.P. 11 (stating that the purpose of Rule 11's evidentiary bar "is to encourage free use of plea discussions by defense counsel"). If negotiations for compromise of a criminal case are to be fruitful, evidence of plea-related statements must be inadmissible in the event negotiations abort. Permitting statements made during plea proceedings to be admissible for impeachment purposes would have a chilling effect on plea negotiations. See, e.g., *Vargas*, 618 P.2d at 231. Moreover, V.R.Cr.P. 11(e)(2) contemplates the PSI as an integral part of plea proceedings. Therefore, statements made during a PSI "cannot realistically be separated" from statements made in other parts of the proceedings. *Jackson*, 325 N.W.2d at 822; see V.R.Cr.P. 11(e)(1) (authorizing plea discussions as first step in plea agreement procedure).

¶ 24. The State argues that the countervailing interest of controlling perjury counsels us to fashion an impeachment exception notwithstanding the plain language of the rules and the intent of their drafters. On review of the legislative history, however, it is evident that V.R.Cr.P. 11 and V.R.E. 410, as well as their federal cousins, are themselves the product of a balancing of the very considerations the State would have us reweigh. That the Legislature balanced the need for candor in plea discussions against the risk of perjury at trial is also evident from the fact that the rules contain two — albeit limited — exceptions to the bar to admissibility. Both V.R.Cr.P. 11 and V.R.E. 410 allow for the admission of certain statements "in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it," and "in a

criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel." V.R.Cr.P. 11(e)(5)(D)(i), (ii); V.R.E. 410(4).[9] The State's argument is essentially that the balances struck by the United States Congress and the Vermont Legislature lean too heavily in favor of candor — that the narrow exceptions to the bar against admissibility provide inadequate protection to the integrity of the judicial process. We disagree, and decline the State's invitation to rebalance these competing considerations here.

¶ 25. Finally, we think it instructive to point out the trial court's error in relying on *Brunelle* in ruling that defendant's PSI statements were admissible for impeachment. In *Brunelle*, we adopted the rule of *Harris v. New York*, 401 U.S. 222, 224-25 (1971), by holding that a defendant's prior inconsistent statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), were admissible to impeach the defendant when "it is clear that the defendant has testified during direct examination in a manner contradictory to the suppressed evidence." *Brunelle*, 148 Vt. at 353, 534 A.2d at 203. In arriving at this holding, we balanced the competing interests of protecting the defendant's right to testify and a fair trial with deterring perjury. *Id.* As we have noted, the interest of controlling perjury is also implicated by the issue raised in this case. But while it was appropriate to balance competing policy considerations to give substance to the broad constitutional guarantees at issue in *Brunelle,* here, protection against admission is controlled by the specific language of the rules. Again, the competing policy interests of encouraging candor in plea discussions and protecting the integrity of the judicial process have already been balanced by the rules' drafters.

¶ 26. *Harris* itself is inapposite to this case as well. In *Harris*, the Court presupposed the trustworthiness of the suppressed statements it ruled were admissible to impeach the defendant. 401 U.S. at 224. Those statements were made in response to questions police asked the defendant as he was being arrested. *Id.* However, there is good reason for not assuming that statements made during the plea-bargaining process — where the defendant is

---

[9] Indeed, those exceptions were "intended to balance the need to encourage candor in plea discussions against the need to protect the integrity of the judicial process." Reporter's Notes, V.R.E. 410.

engaged in the tricky business of waiving his constitutional rights in exchange for more lenient penalties — are reliable. As Justice Carrigan of the Supreme Court of Colorado once reasoned:

> [R]egardless of his reasons for negotiating a plea bargain, a defendant is placed in the inherently coercive situation of either providing the court with [a sufficient] factual basis or having the court refuse to accept his plea and force him to trial on . . . more grave charges. In such circumstances, a defendant may feel constrained to state . . . sufficient facts connecting him to the criminal incident to assure that his plea will be accepted. In my opinion . . . [such statements are] unreliable at best.

*People v. Cole*, 584 P.2d 71, 77 (Colo. 1978) (concurring in part and dissenting in part).

¶ 27. Courts have relied on this kind of reasoning to reject the extension of *Harris* to statements made during the plea process. See, e.g., *Vargas*, 618 P.2d at 231; *People v. Benniefield*, 410 N.E.2d 455, 458 (Ill. App. Ct. 1980); *State v. Boone*, 327 A.2d 661, 666 (N.J. 1974). Indeed, Congress declined to adopt the rule of *Harris* in its 1975 amendment to F.R.Cr.P. 11(e)(6). The Senate's version, which sought to carve out a general impeachment exception to the inadmissibility of statements made in connection with plea proceedings, relied on *Harris* to justify the exception. S. Rep. No. 93-1277, at 11 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7057-58. The adoption of the House version, which specifically removed the impeachment exception, represents "a repudiation by Congress of the *Harris* approach to the plea bargain process." *Trujillo*, 605 P.2d at 234-35. Because the same considerations apply with at least equal force to statements made during a PSI — where, in addition to the perils mentioned above, a defendant may be seeking to demonstrate his amenability to swift rehabilitation by owning up to his guilt and taking responsibility for his actions — we similarly decline to extend our reasoning in *Brunelle* to this case.

¶ 28. For the above-stated reasons, defendant's conviction is reversed and the matter is remanded to the trial court for proceedings consistent with this opinion.

*Reversed and remanded.*