NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 16

No. 2016-073

| | |
|---|---|
| In re Atwood Planned Unit Development (Kevin Trout, Dorothy Wilson, Graham McAfee, Linda McAfee, Steven Wyatt, Donna Wyatt, Jeff Marshall, Jack Manning, Suba Luck, Brian Stevens and Catherine Stevens, Appellants) | Supreme Court<br><br>On Appeal from<br>Superior Court,<br>Environmental Division<br><br>October Term, 2016 |

Thomas G. Walsh, J.

Christina A. Jensen of Lisman Leckerling, P.C., Burlington, for Appellants.

Nicole A. Killoran of Bauer Gravel Farnham, Colchester, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** A group of landowners (neighbors) adjacent to a proposed planned unit development (PUD) challenge the Environmental Division's affirmance of the PUD permit. On appeal, neighbors argue that the Environmental Division improperly required them to amend their original statement of questions and then erred by refusing to consider all of the issues raised by neighbors' Amended Statement of Questions. Neighbors also claim that the court erred as a matter of law when it concluded that adequate notice was posted of the public hearing on the PUD permit. We affirm in part and reverse and remand in part.

¶ 2. In August 2014, Atwood Enterprises, Ltd., (Atwood) applied to the Town of Jericho (the Town) for approval of a PUD. Atwood's proposal involved using a roughly twenty-eight-acre parcel taken from a larger piece of farmland (the Davis property) and constructing a six-unit,

three-duplex subdivision with common lands (the project). The Jericho Land Use and Development Regulations (the regulations), effective February 7, 2013, govern approval of the project.

¶ 3. Prior to the hearing before the Town's Development Review Board (the DRB), Atwood posted notice of the hearing on a tree located on Raceway Road, a public road adjacent to the Davis property. The public roadway most nearly adjacent to the project was Meadow Drive. According to an Atwood representative, one of the Town's zoning employees instructed the representative that the notice could be placed on Raceway Road, on a tree adjacent to the project, rather than on Meadow Drive. The hearing notice placard posted stated that a public hearing would be held on September 25, 2014, at 7:00 p.m. In addition to the notice placard, the Town published the hearing notice in a newspaper of general circulation, posted it in two other public places, and mailed copies to abutting land owners. At the September 25 hearing, neighbors participated fully in the municipal proceeding. Subsequently, on October 27, 2014, the DRB approved Atwood's proposed subdivision plan. The decision addressed a wide range of subjects covered by the regulations, such as conditional-use review, site-plan review, wetland setbacks, and regulations specific to PUDs. Neighbors appealed this determination to the Environmental Division.

¶ 4. Neighbors' original Statement of Questions on appeal to the Environmental Division asked one question: "Does the six-unit, three duplex PUD Subdivision on a 28.5 acre portion of an approximate 123 acre parcel of land owned by Atwood Enterprises, Inc. satisfy the requirements of the Jericho Land Use and Development Regulations?"

¶ 5. The Environmental Division determined that this single question was extremely broad and, as a result, ordered neighbors to file an amended statement of questions setting forth specific issues to be addressed on appeal. The Environmental Division's order was based on Vermont Rule of Environmental Court Proceedings 5(f), which governs the procedure for

2

submitting statements of questions.  Subsequently, in March 2015, neighbors filed the following Amended Statement of Questions:

> 1.  Does the six-unit, three duplex PUD Subdivision on a 28.5 acre portion of an approximate 123 acre parcel of land owned by Atwood Enterprises, Inc. satisfy the requirements of the Jericho Land Use and Development Regulations, including the following:
>
> a.  Whether the applicant has satisfied the procedural requirements to obtain approval, such as the compliance with the notice posting requirements of the Regulations and applicable law;
> b.  Whether the proposed subdivision meets the requirements of the Regulations applicable to planned unit developments;
> c.  Whether the proposed subdivision qualifies for and should be entitled to waivers from the strict application of the Regulations;
> d.  Whether the proposed subdivision complies with the Town of Jericho Comprehensive Plan?

At a status conference on the eve of trial—June 1, 2015—the Environmental Division noted that this Amended Statement of Questions was still fairly broad, but pointed out that Atwood had not exercised its right under Vermont Rule of Environmental Court Proceedings 2(d)(2) to ask for neighbors' amended statement to be clarified.  The court and parties then proceeded to trial based on this Amended Statement of Questions.

¶ 6.    The trial took place over June 2 and June 3, 2015.  Because the Amended Statement of Questions remained fairly broad, Atwood defended the permit by presenting evidence in its case in chief on an enormous range of subjects covered by the regulations.  Similarly, neighbors presented evidence relating to a broad swath of the regulations, including conditional-use review, site-plan review, subdivision review, and general development standards.  For example, Atwood presented testimony demonstrating compliance with the setback requirements for wetlands, the project's wastewater systems, and the project's impact on the local water supply, as well as compliance with other regulations.  Neighbors countered Atwood by presenting evidence suggesting that the project's wastewater system would negatively affect the local water supply, that the project's stormwater runoff system did not comply with minimum standards, and that the

3

project would adversely affect the character of the neighborhood, among other instances of noncompliance.

¶ 7.     At numerous points throughout the first day of trial, Atwood objected to neighbors' cross-examination based on relevancy.  To justify his questions, neighbors' counsel pointed to the Amended Statement of Questions.  For example, neighbors' counsel explained that a question relating to residential versus nonresidential purposes was relevant to conditional-use review under the regulations.  The court acknowledged that the Amended Statement of Questions was extremely broad but noted again that Atwood did not file a motion for a more definitive statement of questions.  Subsequently, neighbors indicated that their proposed findings could be used to ascertain the specific issues they were challenging.  Those proposed findings include seven general categories: (1) protection of overlay districts; (2) access permits—roads and driveways; (3) conditional-use approval; (4) site-plan approval; (5) subdivision review; (6) planned unit development review; and (7) general development standards.

¶ 8.     In a February 4, 2016 decision, the Environmental Division affirmed the DRB's approval of the permit.  Before reaching the merits of the application, the court determined that its jurisdiction was limited to issues specifically raised by the Amended Statement of Questions.  In particular, the court stated that it would not consider any evidence related to conditional-use review, site-plan review, subdivision review, or general development standards because neighbors' Amended Statement of Questions did not explicitly raise those issues.[*]  The court noted that Amended Question 1.b broadly referenced the "[r]egulations applicable to planned unit developments" and that certain subsections of the PUD regulations required compliance with conditional-use, site-plan, subdivision, and general provision standards.  But despite the inclusive

---

[*]     In a footnote, the court briefly addressed the project's wetland setback, wastewater system, and impact on the local water supply, despite stating that neighbors' concerns with these issues were also outside the scope of the Amended Statement of Questions.

language of these PUD subsections, the court determined that considering all of these issues would be too broad and ambiguous to provide notice to Atwood. Moreover, the court determined that considering these broad issues would vitiate the court's limited jurisdiction and disregard the court's earlier order requiring neighbors to specify the issues to be reviewed on appeal.

¶ 9. Having limited the issues in this manner, the Environmental Division noted that three issues remained: (1) whether Atwood satisfied the hearing notice and posting requirements; (2) whether the project complied with provisions of the regulations specific to PUDs; and (3), whether the project complied with the Jericho Town Plan. In regards to the first issue, the court concluded that the hearing notice was posted in an appropriate location that afforded adequate notice and that, even if the notice did not strictly comply with the procedural requirements, the defective notice did not harm neighbors, who all participated in the municipal hearing before the DRB. Next, the court concluded that the project complied with the regulations specific to PUDs. Finally, the Environmental Division determined that the project followed the comprehensive town plan, despite the paucity of evidence presented on the project's compliance.

¶ 10. Neighbors appealed to this Court. On appeal, neighbors advance two arguments involving the statement of questions. First, they argue that the Environmental Division erred as a matter of law in requiring neighbors to amend their original statement of questions because this requirement impermissibly limited the issues neighbors could raise on appeal. Second, they claim that, even if the Environmental Division could order neighbors to amend their statement of questions, once the parties proceeded to trial on the amended questions, the court was obligated to consider all of the issues raised by the Amended Statement of Questions. In addition to these claims involving the statement of questions, neighbors argue that the court erred as a matter of law when it concluded that Atwood satisfied the notice posting requirement. We address each claim in turn.

5

I.

¶ 11.    We review the Environmental Division's interpretation of Vermont Rule of Environmental Court Proceedings 5(f) de novo. In re Gulli, 174 Vt. 580, 582, 816 A.2d 485, 488 (2002)(mem.) ("Questions of law are reviewed de novo, allowing us to proceed with a nondeferential, on-the-record review."). "In interpreting rules of procedure . . . , we employ tools similar to those we use in statutory construction." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126 (2008). Thus, although the general principle is that rules "regulating appeal rights are remedial in nature and must be liberally construed in favor of persons exercising those rights, our ultimate goal is to give effect to the intent of the Legislature." In re Milton Arrowhead Mountain, 169 Vt. 531, 533, 726 A.2d 54, 56 (1999) (mem.). To ascertain the Legislature's intent, we rely principally on the plain meaning of the rule. Amidon, 2008 VT 122, ¶ 16 ("[W]hen construing a rule, we consider its plain language and the purpose it was designed to serve."). When the rule is part of a larger scheme, we read the scheme's "operative sections . . . in context and the entire scheme in pari materia." Cushion v. Dep't of PATH, 174 Vt. 475, 479, 807 A.2d 425, 430 (2002) (mem.).

¶ 12.    Under Vermont Rule for Environmental Court Proceedings 5(f), an appellant must file a statement of questions that the appellant desires to have determined on appeal. According to the advisory notes appending Rule 5(f), "[t]he statement functions like a pleading to limit the issues that are to be heard on the appeal." In accordance with that limiting function, the original statement of questions "may not be amended unless ordered by the court" and the appellant may not raise any question outside of the statement as filed. Reporter's Notes, V.R.E.C.P. 5(f); In re Garen, 174 Vt. 151, 156, 807 A.2d 448, 451 (2002) ("[A]n appeal to the environmental court is confined to the issues raised in the statement of questions filed pursuant to an original notice of appeal."). Similarly, an appellee in environmental proceedings does not have the right to respond to the statement of questions. V.R.E.C.P. 5(f). The only avenue for the appellee to clarify the

6

statement of questions is to file "a motion to clarify or dismiss some or all of the questions." Id. That motion may be filed under Environmental Proceedings Rule 2(d)(2)(vi), which allows the court to determine "whether to narrow the issues to be heard."

¶ 13.    Given the plain language of Environmental Proceedings Rules 5(f) and 2(d)(2)(vi), the court could require neighbors to limit their statement of questions to ensure Atwood and the court had notice of the matters to be considered on appeal.  In this case, Atwood properly asked the court to clarify the issues to be heard in an initial status conference.  V.R.E.C.P. 5(f).  Pursuant to Environmental Proceedings Rule 2(d)(2)(vi), upon this motion, the court was required to consider "whether to narrow the issues to be heard" and permitted to order neighbors to submit an amended statement of questions.

¶ 14.    Such an order does not prohibit "an appellant from appealing all aspects of a project to the Environmental Division," as neighbors argue.  An appellant may challenge all aspects of a project, as long as the claims have enough specificity to notify the opposing party and the court of the issues on appeal.  See generally, In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 20, 188 Vt. 262, 6 A.3d 713 (declining to grant standing where parties' amended statement of questions did not specifically assert basis for party status); In re Gulli, 174 Vt. at 583, 816 A.2d at 489 (concluding "questions exceed[ed] the narrow scope of the group's limited appeal").  Requiring some specificity ensures that our preservation rules are satisfied and "the original forum is given an opportunity to rule on an issue prior to our review."  In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270-71 (2001).  Further, such an order comports with the general scope of the Environmental Division's procedural rules, which must be "administered to ensure summary and expedited proceedings consistent with a full and fair determination in every matter coming before the court."  V.R.E.C.P. 1.  If we prevented the Environmental Division from narrowing the issues upon a properly filed motion, we would not only eliminate an effective tool for ensuring proceedings are efficiently resolved, but also reduce the narrowing language in Rule 5(f) to

7

surplusage. See In re Lunde, 166 Vt. 167, 171, 688 A.2d 1312, 1315 (1997) ("Generally, we do not construe a statute in a way that renders a significant part of it pure surplusage." (quotation omitted)). The court did not err when it required neighbors to file an amended statement of questions under Environmental Proceedings Rule 5(f).

II.

¶ 15. We do conclude, however, that, after requiring neighbors to file a new statement of questions, the court was obligated to resolve all of the issues raised by the Amended Statement of Questions. The Environmental Division's determination of the scope of an appeal is a jurisdictional determination which this Court reviews de novo. In re Gulli, 174 Vt. at 583, 816 A.2d at 489 (reviewing environmental court's dismissal of statement of questions for lack of jurisdiction de novo and concluding "questions exceed[ed] the narrow scope of the group's limited appeal"). Again, we start our review from the concept that appeals rights "must be liberally construed in favor of persons exercising those rights." In re Milton Arrowhead Mountain, 169 Vt. at 533, 726 A.2d at 56.

¶ 16. After requiring neighbors to submit an amended statement of questions, the court proceeded to trial with a statement of questions that included Question 1.b: "Whether the proposed subdivision meets the requirements of the Regulations applicable to planned unit developments." As the court acknowledged, Amended Question 1.b is broadly inclusive because the PUD regulations require compliance with conditional-use, subdivision, and general provision standards. For example, § 10.13.3 of the PUD regulations requires PUD applications to be reviewed pursuant to the subdivision review regulations and indicates that PUDs may include any permitted or conditional uses as long as the uses are subject to all necessary review. Similarly, § 10.13.9.1 mandates that "[a]ll PUDs shall comply with the subdivision review standards, . . . any and all applicable Specific Use Standards . . . , and the General Provisions." Despite these specific references to compliance with the other regulations, the Environmental Division determined that

8

considering all of these issues would be too broad and ambiguous to provide notice to Atwood. As result, the court limited its decision on the merits to those issues specifically relating to PUD regulations.

¶ 17.   This was error.   We have previously considered the Environmental Division's construction of a statement of questions several times.   In In re Jolley Associates, we determined that the trial court could consider the matters intrinsic to a statement of questions, even though the issue was not literally stated in the statement of questions.   2006 VT 132, ¶ 9, 181 Vt. 190, 915 A.2d 282.   More recently, in In re LaBerge NOV, we held that the Environmental Division's jurisdiction extended to a question implicating the constitutionality of the town's ordinances.   2016 VT 99, ¶ 15, __ Vt. __, __ A.3d __.   In that case, the question presented on appeal was whether a certain use of the LaBerges' property violated a section of the town's regulations, a question which required the court to ascertain the meaning and reach of the ordinance.   Id.   Here, Question 1.b asks whether the subdivision meets the requirements of the PUD regulations.   The resolution of this question requires the court to ensure, for example, that "[a]ll PUDs shall comply with the subdivision review standards . . . , any and all applicable Specific Use Standards . . . , and the General Provisions."   § 10.13.9.1.   By declining to specifically address these regulations, the court left open issues presented by the Amended Statement of Questions.

¶ 18.   Further, at trial, both Atwood and neighbors presented evidence relating to many of the subjects outside of the particular PUD regulations.   Because the Amended Statement of Questions remained fairly broad, Atwood defended the permit by presenting evidence in its case in chief on an enormous range of subjects, including conditional-use review, site-plan review, subdivision review, and general development standards.   Similarly, neighbors presented evidence relating to regulations outside of the specific PUD regulations.   Thus, this is not a question of whether Atwood or the court received notice of the issues presented by the Amended Statement of Questions.   Indeed, throughout the trial, Atwood objected to neighbors' cross-examination based

on relevancy and the court, despite acknowledging the Amended Statement of Questions was broad, effectively denied these objections by allowing the evidence to be admitted and proceeding with the trial. Because the parties presented evidence on the regulations and the regulations were before the court, the Environmental Division should have addressed them in its decision.

¶ 19. Finally, our interpretation of the Amended Statement of Questions comports with the general concept that appeal rights "must be liberally construed in favor of persons exercising those rights." In re Milton Arrowhead Mountain, 169 Vt. at 533, 726 A.2d at 56; see also In re Hignite, 2003 VT 111, ¶ 9, 176 Vt. 562, 844 A.2d 735 (mem.) (construing statement of questions liberally in favor of party exercising appeal rights). The Environmental Division could require the Statement of Questions to be more specific; however, once the parties proceeded to trial, neighbors were entitled to have the court resolve all of the issues raised and litigated.

¶ 20. Given this conclusion, we remand for the Environmental Division to resolve the issues raised by neighbors' Amended Statement of Questions and not previously resolved by the court, including subdivision-review standards, conditional-use review, any and all applicable specific-use standards, and the general provisions. See §§ 10.13.1, 10.13.9.1. This remand may include a new evidentiary hearing. We note, however, that significant evidence has already been taken on some of these issues. Further, the Environmental Division may require neighbors to narrow the issues with respect to all of these regulations prior to any evidentiary hearing, if the court takes further evidence. Thus, any new hearing may be strictly limited to evidence on those issues not already litigated.

III.

¶ 21. Finally, we conclude that the Environmental Division did not err when it determined that Atwood satisfied the notice requirements to obtain approval of the project. We review the court's legal conclusions de novo, In re Grp. Five Invs. CU Permit, 2014 VT 14, ¶ 4, 195 Vt. 625, 93 A.3d 111, and will uphold those conclusions if "they are reasonably supported by

10

the findings." In re Champlain Oil Co. Conditional Use Application, 2014 VT 19, ¶ 2, 196 Vt. 29, 93 A.3d 139.

¶ 22. 24 V.S.A. § 4464(a)(1) sets forth the requirements for notifying the public of development review hearings before the appropriate municipal panel. Before the hearing, public notice of the date, place, and purpose of the hearing shall be provided in three ways: (1) publication in a newspaper of general circulation; (2) posting in at least three more public places, "including posting within view from the public right-of-way most nearly adjacent to the property for which an application is made"; and (3), written notification to the applicant and to the owners of all properties adjoining the project. Id. § 4464(a)(1)(A)-(C). Although these requirements are mandatory, "[n]o defect in the form or substance of any requirements . . . shall invalidate the action of the appropriate municipal panel where reasonable efforts are made to provide adequate posting and notice." Id. § 4464(a)(5)

¶ 23. No dispute exists that proper publication occurred in a newspaper of general circulation and that all abutting landowners received a copy of the notice. Instead, neighbors focus on the requirement that the posting must be on the public right-of-way closest to the project. The Environmental Division found that the posting on Raceway Road was not the public roadway "most nearly adjacent" to the project but concluded that the location was appropriate and afforded adequate notice. In the alternative, the Environmental Division determined that any defects in the posting were of "no consequence" under § 4464(a)(5).

¶ 24. We need not address the court's first conclusion that the posting on Raceway Road was adequate, because we hold that, even if there was a defect in the posting, the court properly concluded that Atwood made reasonable efforts to provide adequate posting and notice. First, all parties abutting the project received actual notice via the mail and the hearing was properly published in a newspaper of general circulation. Second, testimony from Atwood's representative suggested that the Town's zoning representative approved of the location on Raceway Way.

11

Finally, and most crucially, there is no evidence that neighbors were prejudiced by the alleged defect in the posting and neighbors do not identify an injury stemming from the posting defect. Given this evidence, the Environmental Division's determination that Atwood made reasonable efforts was supported by the findings. Although the posting language is mandatory, § 4464(a)(5) plainly indicates that the Environmental Division should not invalidate the municipal proceeding if, based on the evidence, the efforts to provide adequate posting and notice were reasonable. Cf. § 4464(a)(5) (requiring invalidation of municipal determination "when the defective posting or notice was materially misleading in content"). In a situation like this, where no prejudice or materially misleading defect is claimed, the record supports the court's conclusion.

Affirmed in part. Reversed and remanded in part.

FOR THE COURT:

_____
Associate Justice

12