NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 71

No. 2017-375

| | |
|---|---|
| Bank of America, N.A. | Supreme Court |
| v. | On Appeal from<br>Superior Court, Washington Unit,<br>Civil Division |
| Seamus P. O'Kelly, Jennifer S. O'Kelly and<br>State of Vermont Department of Taxes | |
| and | March Term, 2018 |
| Sandra J. Lockerby | |

Mary Miles Teachout, J.

William R. Dziedzic and Rachel K. Ljunggren of Bendett and McHugh, P.C., Farmington, Connecticut, and Connie Flores Jones of Winston & Strawn LLP, Houston, Texas, for Plaintiff-Appellant.

John P. Riley of Rice & Riley, PLLC, Montpelier, for Intervenor-Appellee Sandra J. Lockerby.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **CARROLL, J.**   Bank of America appeals a trial court order confirming the sale of a foreclosed property in favor of Sandra Lockerby. For the reasons below, we reverse and remand for proceedings consistent with this opinion.

¶ 2.    The property at issue was foreclosed by judicial order in December 2015. The foreclosure order included a six-month redemption period, permitting Seamus and Jennifer O'Kelly and the Vermont Department of Taxes to redeem the property before or during June 2016.[1] The foreclosure order further provided that if the property was not redeemed, it would be sold to

---

[1]  Neither Seamus O'Kelly, Jennifer O'Kelly, nor the Vermont Department of Taxes is a party in this appeal.

the highest bidder at a public sale. A year later, six months after the redemption period expired, Bank of America held a foreclosure sale of the property. The Bank retained an auctioneer for the sale. The Bank's bid package, which was emailed to the auctioneer on the morning of the sale, included a blank report of sale and a purchase and sale agreement. The bid package also included the amount that the Bank planned to bid for the property at the foreclosure sale. In addition to the auctioneer, the Bank also retained a representative to appear in person at the sale on behalf of the Bank and enter the Bank's bid.

¶ 3. The Bank's representative had difficulty locating the property on the day of the foreclosure sale and did not arrive at the sale in time to enter the Bank's bid. The auctioneer entered the Bank's bid on behalf of the Bank. Sandra Lockerby, the only bidder who appeared in person at the foreclosure sale, entered a bid approximately one-third the amount of the Bank's bid.

¶ 4. The Bank subsequently filed a motion to void the foreclosure sale, noting that the Bank's representative was not able to find the property in time for the sale and therefore could not enter the Bank's bid.[2] The Bank requested that the trial court grant it sixty days in which to hold a new foreclosure sale. The trial court held a hearing on the Bank's motion in April 2017. The court issued an order after the hearing stating that the auctioneer's bid on behalf of the Bank would not be confirmed because it was "improper" under Bank of New York Mellon v. Campbell, a nonprecedential decision issued by the same trial court in 2013. Nos. 229-4-10 Wrcv, 78-2-12 Wrcv, 568-10-11 Wrcv, 319-5-12 Wrcv, 2013 WL 6631044 (Vt. Sup. Ct. Dec. 2, 2013), https://www.vermontjudiciary.org/sites/default/files/documents/2013-12-5-7.pdf [https://perma. cc/N3U4-TH8J]. The court further stated that it had learned during the hearing that a bidder was present at the foreclosure sale and "may be entitled to have his or her bid declared as the successful

_____

[2] It is not clear from the record whether the auctioneer completed a report of sale after the auction, though it does not appear that the auctioneer filed any report of sale with the trial court. The trial court docket entries show that on September 16, 2016, the trial court issued an entry order permitting the Bank to cancel an auction that had been scheduled for September 19, 2016. The next docket entry is dated February 3, 2017 and records the Bank's motion to void the foreclosure sale held on December 8, 2016, which is at issue in this case.

bid." The court ordered that a second hearing be held on the Bank's motion to void the foreclosure sale and that the Bank serve the bidder with the court's order and notice of the hearing on the Bank's motion. Shortly thereafter, Sandra Lockerby, the bidder described in the trial court's order, filed a motion to intervene in the proceedings, which the trial court granted.

¶ 5. The trial court held a second hearing on the Bank's motion to void the foreclosure sale in May 2017. The auctioneer, the Bank's representative, and Sandra Lockerby testified at the hearing. The Bank argued that the trial court had the discretion to deny confirmation of the foreclosure sale to Sandra Lockerby, and that it should do so for two reasons—first, because the Bank representative's failure to appear at the foreclosure sale was due to excusable neglect, and second, because Sandra Lockerby's bid was significantly lower than both the Bank's bid and the foreclosure judgment and, therefore, not commercially reasonable. The Bank specifically stated that it was not arguing that a bank could simply bid through an auctioneer without sending a representative to be present at the sale and place a bid. Rather, the Bank's argument focused on asking the trial court to exercise its discretion to decline confirmation of the foreclosure sale where, the Bank argued, excusable neglect in the failure to appear and the commercial reasonableness of bids received supported voiding the foreclosure sale. The court questioned the Bank regarding its discretion to void a foreclosure sale because the bids received were not commercially reasonable in the following exchange:

> THE COURT: And where are you saying that I have discretion? Just by the fact that it's an equitable proceeding?
>
> THE BANK: Right. I mean, if you don't have discretion, then you'd have to, I mean, approve every sale.
>
> THE COURT: Which we do. We have lots and lots and lots of cases where the judgment might have climbed up to 120,000 dollars but the property goes for fifteen, thirty, twenty. There are some pretty good deals available out there.
>
> THE BANK: I'll have to defer to Your Honor.

3

Ultimately, the trial court confirmed the foreclosure sale in Sandra Lockerby's favor. The court issued an order from the bench, concluding as an initial matter that the auction was duly noticed. In agreement with the earlier order described above, the court also ruled that the auctioneer's bid on behalf of the Bank would not be accepted and that the bid of Sandra Lockerby, the only bidder who appeared in person at the sale, would be confirmed. The court noted that the bidder hired by the Bank attempted to appear but did not. The court issued a written order in July 2017, confirming the sale in Sandra Lockerby's favor. The Bank appealed.

¶ 6.     The Bank raises two primary arguments on appeal. As it did in the trial court, the Bank argues that the trial court had the discretion to decline to confirm the foreclosure sale in this case because first, the representative's failure to appear at the sale was due to excusable neglect and second, the bid received was not commercially reasonable. The Bank also challenges the trial court's reliance on Bank of New York Mellon v. Campbell, and that decision's requirement that a bidder place their bid in person at a foreclosure sale.

¶ 7.     The latter argument was not presented to the trial court, and we will not address it on appeal. O'Rourke v. Lunde, 2014 VT 88, ¶¶ 17, 21, 197 Vt. 360, 104 A.3d 92 (explaining that "[g]enerally, issues that are not presented to the trial court cannot be raised on appeal" and declining to address argument not raised with "specificity and clarity" in trial court (quotation omitted)). At the court's second hearing on the Bank's motion to void the foreclosure sale, the Bank specifically stated that it was not making any argument concerning the trial court's in-person bidding requirement. The Bank stated:

> I just first want to start with what I'm not arguing today, Your Honor. I am not arguing that a bank can simply bid through the auctioneer, not send anybody and tender a bid and that bid should trump an in-person bid from a third party. I'm not arguing that.

The Bank suggests on appeal that its argument to the trial court was that the court should exercise its discretion and decline to confirm the foreclosure sale in Sandra Lockerby's favor and,

moreover, that the statement above was directed to the argument that binding Vermont authority—caselaw and statute—did not require confirmation of an in-person bid as a matter of course.

¶ 8.     To the extent that the Bank's argument addressed the court's discretion to consider multiple factors as part of the confirmation equation, we consider the Bank's argument preserved. But to the extent that the Bank suggests on appeal that it argued before the trial court that binding authority did not mandate an in-person bidding requirement, and accordingly that requirement should not factor into, or control, the trial court's confirmation decision, we do not consider the Bank's argument preserved. Not only did the Bank not challenge the nonprecedential Campbell decision below, but the argument that is preserved on appeal essentially acknowledges that the trial court in this case would consider the presence of an in-person bidder as part of the court's confirmation decision. The Bank's argument thus does not challenge the court's reasoning in requiring in-person bidding and we will not address it in the absence of an argument on this point before the trial court.

¶ 9.     Moreover, even assuming the Bank's argument could be considered preserved, it is not clear that the Bank presented evidence in the trial court that could serve as a factual predicate to an argument that an in-person bidder should not be required. In its motion to void the foreclosure sale, the Bank argued that the auctioneer proceeded to hold the auction without the Bank's representative and placed a bid on behalf of the Bank. This statement was supported by an affidavit in which the auctioneer stated that he placed a bid on the Bank's behalf "without contacting [the Bank's] counsel's office." The auctioneer testified that he thought he was authorized to bid on the Bank's behalf, but also that he had not often worked with the Bank's counsel and was unfamiliar with the shorthand notations used on the bid package. The auctioneer testified further that he was "uncertain" whether a Bank representative would attend the auction, and that he thought that an in-person bidder was required in the county where the auction took place. There was no evidence presented tending to show that the Bank specifically authorized the auctioneer to bid on the Bank's behalf. Indeed, the auctioneer stated that the Bank had not

5

contacted him directly to authorize him to bid. On appeal, the Bank states that "the auctioneer was presented with a firm bid by [the Bank]," but the Bank does not provide support for the evidentiary bridge between the auctioneer's notice of the Bank's bid in the bid package and the Bank's assertion that the auctioneer was actually authorized to place that bid on the Bank's behalf. Without evidence as to this argument, coupled with the absence of clear preservation of the Bank's legal argument, we will not address the Bank's argument relative to the trial court's application of Campbell.

¶ 10. We turn now to the Bank's remaining argument—that the trial court should have considered the reasons for the Bank representative's failure to appear at the foreclosure sale and the commercial reasonableness of the received bids in its confirmation decision. The Bank specifically argues that the trial court abused its discretion by, in essence, accepting a bid approximately one-third the value of the Bank's own bid "on the sole basis that the other lower bidder was present—even where it was clear that [the Bank] made every effort to have a representative appear in person."

¶ 11. We recently explained that "[c]onfirmation of a foreclosure sale is a discretionary judicial action, the purpose of which is to ensure fairness in the foreclosure process." HSBC Bank USA N.A. v. McAllister, 2018 VT 9, ¶ 7, __ Vt. __, 182 A.3d 593. As such, we review a trial court's decision to confirm a foreclosure sale for an abuse of discretion. We will find an abuse of discretion where a court has either "withheld its discretion entirely" or exercised its discretion "for clearly untenable reasons or to a clearly untenable extent." Quenneville v. Buttolph, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 (quotation omitted). We will "consider the entirety of the reasoning behind the superior court's decision to determine if it abused its discretion." HSBC Bank USA N.A., 2018 VT 9, ¶ 8. We agree with the Bank that the trial court in this case effectively withheld its discretion by declining to weigh the equities implicated by the sale to be confirmed and instead confirming the sale in Sandra Lockerby's favor based on the court's own interpretation of the statutory framework as requiring in-person bidding.

¶ 12.    Vermont statute provides that a "court may issue an order of confirmation of [a] sale without hearing, unless the court in its discretion determines that a hearing is necessary."  12 V.S.A. § 4954(a).  In HSBC Bank, we explained:

> Regardless of whether the superior court holds a hearing, if it finds that the sale was not conducted according to statutory requirements or the foreclosure judgment's requirements—or if it finds that there is another reason to be concerned with the integrity of the sale—it has the authority, in its discretion, to refuse to confirm the sale and order another one.

2018 VT 9, ¶ 7.  There, the bank did not send a representative but placed a bid on the property through the auctioneer.  A bidder, present in person at the foreclosure sale, placed a significantly lower bid on the property, and the auctioneer issued a report of sale in the bank's favor at the auction's close.  The in-person bidder then filed a motion in the trial court seeking confirmation of the foreclosure sale in his favor, and essentially arguing that, as the sole in-person bidder, his was the only legitimate bid on the property.  The trial court denied the motion for confirmation of the foreclosure sale, instead ordering a new sale.  We explained that the trial court "had concerns regarding the lack of an in-person bidding requirement in the foreclosure judgment" but also that the trial court's order noted that the bank had not waived a deficiency judgment, and the in-person bidder's low bid would thus leave the mortgagor of the property with a substantial deficiency judgment.  Id. ¶ 4.

¶ 13.    We affirmed, noting that the trial court decision was based generally on the court's concerns regarding the integrity of the foreclosure sale.  We did not discuss the necessity of any specific factor in this discretionary decision but did list lack of an in-person bidding requirement in the foreclosure judgment, uncertainty about the bank's bid, and the effect that confirmation in favor of the in-person bidder would potentially have on the mortgagor as the factors considered by the trial court.  Id. ¶ 9.  We concluded that "[i]t is within the superior court's discretion to consider all factors that it finds relevant and necessary to fulfill the purpose of confirmation orders—

7

ensuring a court reviews the sale and finds it was conducted with fairness and in accordance with the legal requirements." Id. ¶ 10.

¶ 14. HSBC Bank dictates that a trial court fails to exercise its discretion where it does not consider factors relevant to the statutorily mandated procedural requirements of a foreclosure sale, any requirements set out in the foreclosure judgment, and other factors implicating the fairness or integrity of the foreclosure sale. HSBC Bank also stands for the proposition that a trial court may consider the commercial reasonableness of a bid as part of the court's consideration of whether to confirm a foreclosure sale when other evidence calls into question the integrity of the sale. The trial court's decision in HSBC Bank rested, in part, on inequity to the mortgagor as a result of the low bid placed on the foreclosed property, which would, because the bank in that case had not waived the deficiency judgement, result in a large remaining debt for the mortgagor. The HSBC Bank trial court, like the trial court in this case, followed the reasoning of Campbell. The court's decision, then, was based on the presence of several factors that the court found potentially inequitable, including the effect of the low bid on the parties.

¶ 15. As explained above, we are not directly confronted with Campbell's reasoning here, and thus we do not consider whether the presence of an in-person bidder is among the factors the trial court should consider in its confirmation decision. But we are directly confronted with whether the commercial reasonableness of a bid is among those factors, and we now make explicit what was implicit in HSBC Bank—commercial reasonableness may be a factor where there is other evidence that suggests that a sale "was [not] conducted with fairness and in accordance with the legal requirements." Id. ¶ 10. "A foreclosure action, even when by sale, remains an equity action, and the court has the power to refuse to confirm a sale where the result would be inequitable." Reporter's Notes—1982 Amendment, V.R.C.P. 80.1. Accordingly, where evidence suggest that the integrity of a sale may be undermined, commercial reasonableness may be an appropriate factor for the trial court's consideration.

8

¶ 16. <u>HSBC Bank</u> controls the outcome in this case. Here, it appears that the trial court declined to exercise its discretion—instead confirming the foreclosure sale in favor of the in-person bidder without considering whether circumstances of the auction compromised its fairness. It is not clear from the record that the trial court believed it had discretion with respect to the confirmation of the sale. We accordingly remand for the trial court to exercise its discretion in confirming, or not confirming, the sale, including consideration of whether the foreclosure sale satisfied statutory requirements and other factors relevant to the integrity and fairness of the sale.

<u>Reversed and remanded for proceedings consistent with this opinion</u>.

FOR THE COURT:

_____

Associate Justice