NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 10

No. 2021-124

| | |
|---|---|
| New England Phoenix Company, Inc. | Supreme Court |
| v. | On Appeal from Superior Court, Grand Isle Unit, Civil Division |
| Grand Isle Veterinary Hospital, Inc. et al. | December Term, 2021 |

Robert A. Mello, J.

Herbert J. Downing of Kolvoord, Overton & Wilson, P.C., Williston, for Plaintiff-Appellant.

Anne K.G. Bazilwich, Pro Se, Blacksburg, Virginia, Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Teachout, Supr. J., Specially Assigned

¶ 1.   **CARROLL, J.**   New England Phoenix Company, Inc. appeals a trial court order denying its motion for a deficiency judgment following a foreclosure decree and an order confirming its purchase of a mortgaged property at a judicial sale. We reverse the order denying the deficiency judgment and remand.

## I. Factual Background

¶ 2.   In 2010, Bank of America lent a veterinary hospital business in Grand Isle a total of $610,244.20.[1]   Paws and Laws, LLC owned the hospital's real property, and Grand Isle Veterinary Hospital, Inc. owned the business assets. Bank of America lent Paws and Laws

_____

[1] In its order, the trial court found that the total amount lent in 2010 was $574,000. However, the record indicates that the total amount was $610,244.20.

$374,000.00, secured by a mortgage on the real property. The bank also lent Grand Isle Veterinary Hospital $236,244.20 under a finance agreement, secured by the business's personal property and assets. Guarantor Anne Bazilwich, owner and operator of the businesses, executed personal guarantees for both loans.

¶ 3.     In 2012, violating the terms of the 2010 mortgage, Paws and Laws conveyed the real property by quit claim deed to Grand Isle Veterinary Hospital. In 2014, Grand Isle Veterinary Hospital gave Bank of America a second mortgage on the real property securing the $236,244.20 finance agreement. Soon thereafter the business defaulted on the loans and guarantor abandoned the property. Guarantor's attempts to sell the property were unsuccessful. Bank of America did not initiate foreclosure proceedings on the loans.

¶ 4.     In 2018, Bank of America assigned the loans and mortgages to New England Phoenix. New England Phoenix filed this foreclosure action in April 2019. Guarantor, who had since moved to Virginia, did not respond to repeated attempts to serve her notice of the foreclosure action, and did not participate in the proceedings.[2]

¶ 5.     In late 2019, the trial court entered a default judgment against guarantor, Paws and Laws, and Grand Isle Veterinary Hospital, issued a foreclosure decree by judicial sale, and set a thirty-day redemption period. Neither guarantor nor Grand Isle Veterinary Hospital redeemed the property, and a judicial sale was held in July 2020 after a delay due to COVID-19-related scheduling complications. At the sale, New England Phoenix submitted the winning bid of $325,000.00.

¶ 6.     In August 2020, New England Phoenix filed a motion for a confirmation order and deficiency judgment. In its motion, New England Phoenix represented that the total amount due for the loans was $790,230.48, which included previous unpaid interest plus interest accrued after

---

[2] Guarantor also did not participate in this appeal.

2

the foreclosure decree and the costs of the judicial sale. It then subtracted the proceeds from the judicial sale—$325,000.00—from this total and requested the difference—$465,230.48—as a deficiency. New England Phoenix did not reference Vermont Rule of Civil Procedure 80.1(j)(2) in this motion.

¶ 7. A hearing was held on New England Phoenix's motion in January 2021. The court granted New England Phoenix's motion for a confirmation order but requested additional information before it would rule on the deficiency, including the appraised value in 2010 when the loans were first disbursed, when exactly guarantor abandoned the property, how long guarantor had the property on the market and for what listing price. Neither the court nor counsel mentioned Rule 80.1(j)(2) at the hearing.

¶ 8. In response to the court's request, New England Phoenix filed a supplemental affidavit again detailing a deficiency judgment of $465,230.48. The supplemental affidavit represented that the value of the property had continued to decline in the years since guarantor had abandoned it, and that the current tax assessment of the property was $439,500.00. New England Phoenix told the court that its purchase of the property for $325,000.00 was "in between the current listing price of $295,000.00 and the [tax-]assessed value of $439,500.00 and, therefore, a reasonable reflection of the fair market value."

¶ 9. In March 2021, the court issued an order confirming the sale and transferring title to the property to New England Phoenix.[3] In a separate entry order, the trial court restated its request from the hearing that New England Phoenix provide the 2010 appraisal before it would rule on the deficiency judgment. New England Phoenix explained that it had not provided the court with a copy of the 2010 appraisal in its supplemental affidavit because Bank of America never supplied one. New England Phoenix argued, in effect, that the 2010 appraisal was immaterial to the court's decision, and that in any case, by the time it took an assignment of the

---

[3] New England Phoenix subsequently sold the property for $260,000.00 in May 2021.

3

loans and mortgages, the property had long been abandoned and contained no business assets. New England Phoenix represented that the buildings on the property would likely need to be demolished and that guarantor's uncooperativeness was to blame for the delays in bringing the matter to a close. Finally, New England Phoenix argued that "the value of the [m]ortgaged [p]roperty today is low in relation to the debt owed."

¶ 10.    The trial court denied New England Phoenix's motion for deficiency judgment. The court cited a Connecticut case for the proposition that "it is within this court's discretion whether to grant or deny a motion for a deficiency judgment, in whole or in part." The court found that New England Phoenix knew when it took the assignment "that the loans had been in default for many years and the value of the mortgaged premises had depreciated very significantly due to years of abandonment and disuse." The court concluded that the foreclosure proceedings "ha[d] been extremely protracted." Accordingly, the court found that assessing "so large an amount of interest" under these circumstances would be unjust.

¶ 11.    New England Phoenix filed a motion to reconsider. It first conceded that it had erred by not pleading for a deficiency under Rule 80.1(j)(2). Now using the Rule, New England Phoenix calculated that the deficiency was $340,230.48, not $465,230.48. Moreover, it argued that Vermont case law contains no "factors in equity" which would permit a trial court to deny a deficiency judgment in its entirety, and suggested that the case the court cited, to the extent it was applicable, merely stood for a court's ability to equitably reduce the interest owed. In the alternative, New England Phoenix argued that, even if the court did have the authority to deny the deficiency judgment outright, it could independently recover against guarantor in her personal capacity, because she was a guarantor not a mortgagor.

¶ 12.    The court denied the motion to reconsider. It concluded that New England Phoenix was attempting to "obtain a second bite at the apple" by presenting new arguments and introducing new facts, which it is not permitted to do in a motion to reconsider. The court found that New

4

England Phoenix's claim against guarantor should have been raised earlier. It found that New England Phoenix's supplemental affidavit, filed with its motion to reconsider, contained facts that contradicted New England Phoenix's earlier representations. For example, New England Phoenix now represented that guarantor did not default and abandon the property "within a few years" of the 2010 loan origination as the court's order had found. New England Phoenix now represented that the greatly reduced value of the property was not due to the deterioration of the property but rather to its location, and that the buyers would not demolish or reconstruct buildings on the property.

¶ 13. The court reasoned that any errors in the factual record on which it relied to deny the deficiency judgment were the fault of New England Phoenix, and not the fault or mistake of the trial court. Moreover, it concluded that New England Phoenix had failed to present any new authority as to why the court could not deny a deficiency judgment in its entirety. However, it did not address New England Phoenix's argument that the court had erred by failing to use Rule 80.1(j)(2) to calculate a potential deficiency judgment.

¶ 14. On appeal New England Phoenix makes three arguments: (1) the trial court erred when it did not apply Rule 80.1(j)(2) in its order denying the deficiency; (2) the trial court abused its discretion by denying the deficiency in its entirety; and (3) New England Phoenix's claim against guarantor is an independent cause of action because she is not a "mortgagor" within the meaning of the applicable statute.

II. Standard of Review

¶ 15. We begin with New England Phoenix's argument that the court abused its discretion by denying its motion for deficiency judgment in its entirety. As an initial matter, we must determine the appropriate standard of review to evaluate this argument. New England Phoenix suggests the correct standard is for an abuse of discretion. However, this depends on whether the relevant statutes provide trial courts the discretion to alter or deny a deficiency

5

judgment, a question of law that we review de novo. State v. Eldredge, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816.

¶ 16.   "Our primary objective in construing a statute is to effectuate the Legislature's intent." Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215 (quotation omitted). We assume the Legislature intends the plain, ordinary meaning of language in statutes. Id. If a statute is unambiguous on its face our inquiry ends. Green Mtn. Fireworks, LLC v. Town of Colchester, 2020 VT 64, ¶ 11, __ Vt. __, 249 A.3d 296. Only where the statutory language is ambiguous or creates uncertainty will "we resort to statutory construction to ascertain the legislative intent." T.C. v. L.D., 2020 VT 19, ¶ 4, 211 Vt. 582, 229 A.3d 77 (quotation omitted).

¶ 17.   The Legislature provides courts the authority to grant mortgage foreclosures by judicial sale.   12 V.S.A. § 4945(a) ("All . . . mortgages affecting real property may . . . at the discretion of the court . . . be foreclosed by a judicial foreclosure sale."). A separate section, 12 V.S.A. § 4954, governs the process following a judicial sale.  This process includes issuing an order confirming the sale, transferring title to the mortgaged property, calculating disbursement of surplus sale proceeds, and considering the conditions necessary to assess a deficiency judgment. Id. § 4954(a)-(d).

¶ 18.   As relevant here, § 4954(d) provides that after a sale "[t]he court may assess a judgment against the mortgagor for the deficiency if the proceeds of [the] sale are insufficient to meet the expenses incurred in making the sale and amount due to the plaintiff." Id. (emphasis added). We generally give the word "may" its plain, ordinary meaning, which connotes discretion. Vt. Nat'l Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 55, __ Vt. __, 250 A.3d 567.  We do not depart from our general rule here.

¶ 19.   The Legislature used "may" in § 4954(d) in the context of a statutory scheme where "it is proper for [courts] to weigh the equities of the situation." Merchs. Bank v. Lambert, 151 Vt. 204, 206, 559 A.2d 665, 666 (1989) (describing nature of foreclosure actions).  For example, in

6

HSBC Bank USA N.A. v. McAllister, we held that judicial confirmation of a foreclosure sale pursuant to § 4954(a)[4] is discretionary because the statute is clear, on its face, that courts possess the equitable authority to ensure fairness in the foreclosure process. 2018 VT 9, ¶ 7, 206 Vt. 445, 182 A.3d 593 (emphasizing word "may" in § 4954(a) connotes discretion). We noted, with respect to the court's exercise of discretion to order a new sale where one had already occurred, that § 4954(a)'s lack of "specific criteria for setting aside a judicially ordered public sale" meant that the court could "consider all factors it finds relevant and necessary to fulfill the purpose of confirmation orders." Id. ¶¶ 8, 10.

¶ 20.    Conversely, in the section detailing the distribution of surplus sale proceeds, the Legislature used "shall," not "may," in the operative provision. Section 4954(c) provides that when the proceeds exceed the amount due, after satisfying the claims of the mortgagee and other creditors, "the excess shall be paid to the defendant mortgagor." We have said that "[s]tatutes generally use 'shall' as imperative or mandatory language." State v. Rafuse, 168 Vt. 631, 632, 726 A.2d 18, 19 (1998) (mem.) (citing Black's Law Dictionary 1375 (6th ed. 1990)). "Shall" is "a word of command, and it is inconsistent with a concept of discretion." Id.; see also Baldauf v. Vt. State Treasurer, 2021 VT 29, ¶ 19, __ Vt. __, 255 A.3d 731 (reasoning that though "we presume that the Legislature chooses statutory language intentionally, so different words carry different meanings," we "read and construe together subsections of a statute that were drafted as part of an overall statutory scheme" (quotation omitted)).

¶ 21.    Considering this overall language and context of § 4954, we conclude that § 4954(d) provides trial courts with the discretion to deny deficiency judgements.[5] The Legislature

---

[4]    Section 4954(a) provides in relevant part: "The court may issue an order of confirmation of the sale without hearing, unless the court in its discretion determines that a hearing is necessary."

[5]    We note some states have decided this question differently. For example, the South Carolina Supreme Court, in a case involving similar facts, held that the word "may" in the analogous South Carolina statute "clearly conflicts with South Carolina case law on this issue." Am. Gen. Fin. Servs., Inc. v. Brown, 658 S.E.2d 99, 100 (S.C. 2008); but see Nat'l Enters., Inc. v.

could have used "shall" instead of "may," if it intended to require courts to mechanically grant deficiency judgments where the amount owed exceeds "the proceeds of [the] sale." 12 V.S.A. § 4954(d). But it did not because " '[a] foreclosure action, even when by sale, remains an equity action.' " Bank of Am., N.A. v. O'Kelly, 2018 VT 71, ¶ 15, 208 Vt. 20, 194 A.3d 746 (quoting Reporter's Notes—1982 Amendment, V.R.C.P. 80.1).

¶ 22. We examine a trial court's discretionary rulings using "an abuse of discretion standard of review, which requires a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." HSBC Bank, 2018 VT 9, ¶ 8 (quotation omitted). "[A] trial court fails to exercise its discretion where it does not consider factors relevant to the statutorily mandated procedural requirements of a foreclosure sale, any requirements set out in the foreclosure judgment, and other factors implicating the fairness or integrity of the foreclosure sale." O'Kelly, 2018 VT 71, ¶ 14. With this standard of review in mind, we now turn to the trial court's denial of New England Phoenix's motion for deficiency judgment.

### III. Discussion

#### A. Rule 80.1(j)(2)

¶ 23. Although it provides courts the discretion to grant or deny a deficiency judgment, § 4954(d) is silent regarding the factors the trial court must consider in doing so, including the calculation of a deficiency. This Court has long held that "[w]here . . . [a] deficiency can be demonstrated, a personal judgment for the balance may be sought and secured by the mortgagee." United Sav. Bank v. Barber, 135 Vt. 278, 279-80, 375 A.2d 993, 994 (1977) (tracing doctrine back to Lovell v. Leland, 3 Vt. 581 (1831)). We have reasoned that "[i]f the security is less in value than the amount of the decree the payment is pro tanto." Hewey v. Richards, 116 Vt. 547, 551, 80

_____

Thompson, 682 So. 2d 677, 678 (Fla. Dist. Ct. App. 1996) (per curiam) ("A trial court's discretion with regard to granting or denying a deficiency, although entitled to great weight, is not absolute.").

A.2d 541, 543 (1951); see <u>Vt. Nat'l Bank v. Leninski</u>, 166 Vt. 577, 578, 687 A.2d 890, 892 (1996) (mem.) ("[T]he deficiency is the difference between the fair market value of the premises and the debt."). However, we have approved of a court's discretion to deny a deficiency judgement if the court decides the judgment would be inequitable. See, e.g., <u>Bank of Am., N.A. v. O'Kelly</u>, No. 2019-223, 2019 WL 6048912, *5 (Vt. Nov. 14, 2019) (unpub. mem.) (citing <u>HSBC Bank</u>, 2018 VT 9), https://www.Vermont judiciary.org/sites/default/files/documents/eo19-223.pdf [https://perma.cc/38NB-FUCJ] (affirming trial court's decision denying mortgagee deficiency judgment because mortgagee's conduct likely prejudiced mortgagor's interests).

¶ 24. In situations where, as here, the foreclosing mortgagee is also the purchaser at a judicial sale, Rule 80.1(j)(2) sets forth specific considerations in determining a deficiency judgment. It provides:

> In the event that the proceeds of the sale are insufficient to meet the expenses incurred in making the sale and the amount due the plaintiff, the court shall provide in its order of confirmation for the payment of the reasonable expenses incurred in making the sale and the payment of the balance of the proceeds to the plaintiff on account of the amount due the plaintiff. If the plaintiff so requests in the complaint, the court <u>may</u> assess a judgment against the mortgagor for the deficiency. Where the mortgagee is the purchaser at the sale, any deficiency <u>shall</u> be limited to the difference between the fair market value of the premises at the time of sale, as determined by the court based on the appraisal provided in subdivision (i) and such other evidence as may be received, and the amount due the plaintiff plus the reasonable expenses incurred in making the sale.

V.R.C.P. 80.1(j)(2) (emphases added). The Rule, like § 4954(d), provides courts the discretion to "assess a judgment against the mortgagor for the deficiency." The Rule further clarifies that where the mortgagee is the purchaser, "any deficiency shall be limited." New England Phoenix argues that this language means the court is required to grant a deficiency precisely equal to the difference between the fair market value at the time of the sale and the outstanding debt plus costs. It argues that the under the Rule, "the determination of the deficiency is a matter of arithmetic."

¶ 25.    "In interpreting rules of procedure . . . we employ tools similar to those we use in statutory construction." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126. "[O]ur ultimate goal is to give effect to the intent" of the rule and to do this "we rely principally on the plain meaning of the rule." In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 11, 204 Vt. 301, 167 A.3d 312 (quotation omitted). "When the rule is part of a larger scheme, we read the scheme's operative sections . . . in context and the entire scheme in pari materia." Id. (quotation omitted).

¶ 26.    We begin with the plain meaning of "shall be limited" in Rule 80.1(j)(2). A primary definition of "limit" is to provide "[t]he extent of power, right, or authority." Limit, Black's Law Dictionary (11th ed. 2019). "Limited," the adjectival form of "limit," is "characterized by enforceable limitations prescribed . . . upon the scope or exercise of powers." Limited, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/limited [https://perma .cc/ 4EMY-M6XQ]. Therefore, in the context of the entire scheme, "shall be limited" means that, in the situation where a mortgagee is the purchaser, courts may grant deficiency judgments up to and including the difference prescribed in the Rule, but not more. As explained in the Reporter's Notes, the purpose of the Rule limiting judgment in these circumstances is to "protect the interest of the mortgagor." Reporter's Notes—1982 Amendment, V.R.C.P. 80.1. The Rule, which largely follows the majority approach in the United States, "is aimed primarily at preventing the unjust enrichment of the mortgagee." Restatement (Third) of Prop.: Mortgs., § 8.4 cmt. a (1997); see also HawaiiUSA Fed. Credit Union v. Monalim, 464 P.3d 821, 832-35 (Haw. 2020) (adopting similar approach to calculate deficiencies where mortgagee is purchaser). Despite New England Phoenix's argument otherwise, it does not follow that the Rule would mechanically mandate a deficiency amount where the purpose is to provide heightened considerations of a mortgagor's interests.

¶ 27.    Moreover, as we have previously held, it is within the trial court's discretion in confirming the sale to consider the fairness of a potential deficiency judgment. See O'Kelly, 2018

VT 71, ¶¶ 13-14. However, in cases where the mortgagee is the purchaser, it is not the sale price that is determinative in the calculation of a deficiency judgment as it often is when the purchaser is a third party.[6] The fair market value at the time of the sale is determinative.[7] Thus, in this situation, the court has the discretion to deny a deficiency even after it has confirmed the sale. See Id. ¶ 14 ("[A] trial court fails to exercise its discretion where it does not consider factors relevant to the statutorily mandated procedural requirements of a foreclosure sale . . . [and] any requirements set out in the foreclosure judgment . . . .").

¶ 28. Nonetheless, "the foreclosure of mortgages is an equitable remedy, and thereby subject to the considerations inherent in the exercise of a court of equity's historic jurisdiction." Pownal Dev. Corp. v. Pownal Tanning Co., 171 Vt. 360, 365, 765 A.2d 489, 493 (2000) (citation omitted). Ordinarily, "[i]t is not the nature of equity . . . to work a forfeiture." Merchs. Bank, 151 Vt. at 207, 559 A.2d at 667. Even if the Rule provides enhanced considerations for the mortgagor, the interest of the mortgagee to be made whole remains undiminished. See Restatement (Third) of Prop.: Mortgs., § 8.4 cmt. a. Ordinarily, both interests are served by following the formula set forth in Rule 80.1(j)(2).

### B. The Court's Order Denying the Deficiency Judgment

¶ 29. Here, the trial court did not follow the formula. The Rule requires the court to establish fair market value at the time of the sale, "based on the appraisal provided in subdivision (i) and other evidence as may be received." V.R.C.P. 80.1(j)(2); see also Reporter's Notes—1982 Amendment, V.R.C.P. 80.1 ("The court must affirmatively establish fair market value."). The court found that the most recent tax assessed value of the property was $439,500.00 in 2012,

---

[6] "One can assume that the sale price is the fair market value in most cases." Reporter's Notes—1982 Amendment, V.R.C.P. 80.1.

[7] The sale price can be among "the evidence that may be admitted" under Rule 80.1(j)(2). See Leninski, 166 Vt. at 578, 687 A.2d at 892 ("The court is not limited in the manner of evidence or the means that may be considered for determining market value.").

though it found that "the property is certainly not worth its tax assessed value." The court noted that the condition of property had deteriorated to the extent that New England Phoenix had at one point listed the property for $295,000.00, and that its winning $325,000.00 bid at the judicial sale was $150,000.00 more than the next highest bid.[8] At no point, however, did the trial court make a finding of the property's fair market value.[9] Without this crucial fact, it could not make a proper deficiency calculation.

¶ 30. In addition to failing to consider the necessary factors to calculate a deficiency judgment, the court's reasons for denying the deficiency judgment are "clearly untenable." HSBC Bank, 2018 VT 9, ¶ 8 (quotation omitted). The court reasoned that New England Phoenix took an assignment of the debt and security "knowing that the loans had been in default for many years and that the value of the mortgaged premises had depreciated very significantly due to years of abandonment and disuse." To the extent this conclusion is supported by the record, it is irrelevant in the context of New England Phoenix's business practices. The correct standard is whether a secured creditor disposed of the property in a commercially reasonable manner. See Chittenden Tr. Co. v. Maryanski, 138 Vt. 240, 244, 415 A.2d 206, 208 (1980); see also Fed. Fin. Co. v. Papadopoulos, 168 Vt. 621, 623, 721 A.2d 501, 503 (1998) (mem.) ("The burden is on the secured party to prove that the disposition of collateral was commercially reasonable . . . ."). Though "the risk of loss is part of the risk of lending," First Bank v. Fischer & Frichtel, Inc., 364 S.W.3d 216, 227 n.5 (Mo. 2012) (en banc) (Teitelman, C.J., dissenting), without some evidence that New England Phoenix acted unreasonably in taking an assignment of the debt or in the disposition of

---

[8] We note that New England Phoenix did not provide a copy of a March 2019 appraisal it had prepared to the court until after the court denied its motion for deficiency judgment.

[9] Contrary to New England Phoenix's argument that the 2010 appraisal was irrelevant to determine the fair market value of the property at the time of the judicial sale, the Rule expressly permits the trial court to consider "other evidence as may be received." V.R.C.P. 80.1(j)(2). If the court considered the 2010 appraisal necessary to make the determination, the court's request was a proper exercise of its discretion.

the mortgaged property, the conclusion that New England Phoenix has to "be expected to live with the economic consequences of its decision" is not supported by the findings.

¶ 31.   The trial court's conclusion that the "extremely protracted" foreclosure proceeding rendered it inequitable "to saddle [mortgagors] with interest that has been accumulating on the loans for several years" is similarly untenable.  Most relevant to this conclusion, the court found that Bank of America did not foreclose the loans, that New England Phoenix did not initiate foreclosure proceedings until April 2019, and that guarantor did not delay the proceedings by virtue of not participating.

¶ 32.   Unreasonable delay is an equitable consideration in foreclosure proceedings.  See Quazzo v. Quazzo, 136 Vt. 107, 114, 386 A.2d 638, 642 (1978) ("What constitutes unreasonable and inexcusable delay depends largely upon the circumstances of the particular case." (quotation omitted)).  However, delay alone is insufficient; the delay must prejudice the mortgagor.  Turner v. Turner, 131 Vt. 253, 257, 305 A.2d 592, 595 (1973).  Unreasonable delay is an affirmative defense, "and the burden is on the party relying on it."  Preston v. Chabot, 138 Vt. 170, 172, 412 A.2d 930, 931 (1980).  A party subject to a default judgment implicitly waives its right to raise affirmative defenses later in the litigation.  LaFrance Architect v. Point Five Dev. S. Burlington, LLC, 2013 VT 115, ¶¶ 9-11, 195 Vt. 543, 91 A.3d 364.

¶ 33.   The record shows that guarantor, in addition to executing a personal guarantee for the loans, defaulted on the payments, abandoned the property, did not answer the foreclosure complaint, and did not appear in the foreclosure proceedings or acknowledge the pendency of this appeal.  Moreover, when New England Phoenix took possession of the real property, it found no business assets, including veterinary equipment.  Pursuant to the 2010 finance agreement, this equipment was secured collateral against the $236,244.20 loan.  The record does not show that guarantor has failed to answer because of mistake or inadvertence, and there is no evidence that her neglect is excusable under the circumstances or that she has "demonstrated any good or

13

meritorious defense to [New England Phoenix's] claims." LaFrance Architect, 2013 VT 115, ¶ 11 (quotation omitted) (describing factors used to decide whether to set aside default judgment). The court's order, in effect, rewards a defaulting guarantor.

¶ 34. Moreover, New England Phoenix filed the foreclosure complaint approximately five months after taking the assignment from Bank of America. Shortly before the original March 2020 judicial sale was scheduled, the outbreak of the COVID-19 pandemic delayed the sale until July 2020. Following the sale, New England Phoenix timely filed a motion for a confirmation order and deficiency judgment. Though it did not provide the court with the 2010 appraisal as ordered, this delay, to the extent it was prejudicial to guarantor, was harmless because she had made no attempt to appear after the court entered a default judgment against her.

¶ 35. We therefore conclude that the court abused its discretion by failing to consider factors relevant to Rule 80.1(j)(2), and by exercising its discretion to deny a deficiency judgment "for clearly untenable reasons." HSBC Bank, 2018 VT 9, § 8 (quotation omitted). On remand, the trial court should determine the fair market value of the property at the time of the sale and determine the amount of any deficiency judgment based on its assessment of relevant factors.

C. New England Phoenix's Claim Against Guarantor

¶ 36. Finally, New England Phoenix argues that even if the trial court has the discretion to deny a deficiency, it nonetheless retains an independent cause of action to recover against guarantor because she is not a mortgagor within the meaning the statute. New England Phoenix raised this argument for the first time in its motion to reconsider. A party "cannot use a motion to reconsider to raise a wholly new theory" that should have been raised earlier in the litigation. Agency Nat. Res. v. Parkway Cleaners, 2019 VT 21, ¶ 45, 209 Vt. 620, 210 A.3d 445 (quotation omitted). Moreover, New England Phoenix does not challenge the court's denial of its motion to reconsider. See Rowe v. Brown, 157 Vt. 373, 379, 599 A.2d 333, 337 (1991) ("Issues not raised

14

on appeal are deemed waived."). Therefore, we need not, and do not, reach the merits of this argument.

## IV. Conclusion

¶ 37.    Our conclusion today is not to be read as giving unbridled discretion to the trial courts to deny deficiency judgments where the mortgagee is the purchaser at a judicial sale. To the contrary, the procedure set forth in Rule 80.1(j)(2) ordinarily protects the interests of both mortgagee and mortgagor. Therefore, we reverse the trial court's order and remand for further findings and conclusions consistent with this opinion.

Reversed and remanded for further findings and conclusions consistent with this opinion.

FOR THE COURT:

_____
Associate Justice