VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket No. 23-ENV-00057



| Spaulding NOV |
|---|

## ENTRY ORDER

Title:         Motion to Clarify and/or Dismiss Questions and to Strike (Motion: 3)

Filer:         Beriah C. Smith, Esq.

Filed Date:    October 20, 2023

Appellant's Reply to Motion, filed on November 3, 2023, by Edward Spaulding.

**The motion is GRANTED IN PART and DENIED IN PART.**

This is an appeal of a Town of Waitsfield Development Review Board (DRB) decision denying Edward and Courtney Spaulding's (Appellants or the Spauldings) appeal of a February 13, 2023 Notice of Violation (NOV). the Town of Waitsfield Planning and Zoning Administrator (Zoning Administrator) issued the NOV which alleges that the placement of a storage container (the Storage Container) on the Spauldings' property located at 31 Center Fayston Road, Waitsfield, Vermont (the Property) without a zoning permit and within the front setback on the Property on Center Fayston Road are violations.

Appellants appeal the DRB's decision to this Court. Presently before the Court is the Town of Waitsfield's (Town) motion to clarify or dismiss and strike portions of the Spauldings' Statement of Questions.

### Legal Standard

Statements of Questions in the Environmental Division are subject to a motion to dismiss or clarify the questions therein. V.R.E.C.P. 5(f). With respect to motions to clarify questions, this Court has the discretion to order an appellant, here the Spauldings, to clarify or narrow their Statement of Questions. See In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 14, 204 Vt. 301. We will direct a party to clarify its questions when it is necessary to ensure that "the claims have

1

enough specificity to notify the opposing party and the court of the issues on appeal." Id. (citing In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 20, 188 Vt. 262; In re Gulli, 174 Vt. 582, 583 (2002) (mem.)).

With respect to motions to dismiss for lack of subject matter jurisdiction, we follow the standards established by Vermont Rules of Civil Procedure (V.R.C.P.) Rule 12(b)(1), because the civil rules govern proceedings in this Court. See V.R.E.C.P. 5(a)(2). When considering Rule 12(b)(1) motions to dismiss, this Court accepts all uncontroverted factual allegations as true and construes them in the light most favorable to the nonmoving party. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245. We, therefore, provide deference to the Spauldings in reviewing the pending motion.

Pursuant to the Vermont Rules of Civil Procedure, a Rule 12(b)(6) "motion to dismiss serves to identify an insufficient cause of action... where essential elements are not alleged." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 13, 184 Vt. 1. The Court, in reviewing a motion to dismiss, must "accept all facts as pleaded in the complaint [and] accept as true all reasonable inferences derived therefrom ...." Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 12, 200 Vt. 465. However, the Court is "not required to accept as true 'conclusory allegations masquerading as factual conclusions' in 12(b)(6) analysis." Colby, 2008 VT 20, ¶ 10 (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002)).

Finally, pursuant to V.R.C.P. 12(f):

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 21 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

V.R.C.P. 12(f).

### Discussion

I.    **Question 1**

Question 1 asks:

> 1.    The Storage Container or ISO Container was placed on our property in October of 2020, this is the third use of such a container

for the storage of property. The first being in 2016 for the lead paint remediation of the home by the State of Vermont. This third ISO Container is necessary due to the damage to our home and attached garage resulting from flooding due to a failed culvert adjacent to our property and maintained by the Town of Waitsfield. Settlement was reached with the Town of Waitsfield regarding this culvert's failure and the damage to our property resulting from Culvert #1 on August 2016. We have taken issue with the amount of the settlement ($15,000 dollars) as this failed to cover the damage and has significantly delayed remediation of the damage. We have been in communication with the town over this and other damage to our property since 2014. We see this alleged enforcement of a Zoning Bylaw against us as an act of retaliation by the Town's "new" administration, as we previously had a verbal understanding with the Town of Waitsfield that accompanied the signed Settlement that the town would support our recovery from the flooding incidents resulting from culvert #1's failure. Would an act of retaliation by the Town of Waitsfield not violate the settlement agreement and the accompanying verbal agreement?

Appellants' Statement of Questions (filed on Aug. 25, 2023).[1]

While the Question contains significant argument and background that is inappropriate in a Statement of Questions, see In re Northeast Materials Grp., LLC, No. 143-10-12 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. May 8, 2013) (Walsh, J.) (citing V.R.C.P. 8(a)). The Court interprets the crux of the Question as whether the NOV is a violation of a settlement agreement between the parties.[2] This question is outside the scope of this Court's jurisdiction.

The Environmental Division is one of limited jurisdiction. 4 V.S.A. § 34 (defining the jurisdiction of the Environmental Division). This Court does not have jurisdiction over private contractual disputes between parties. Id. The proper Court for such disputes in the State of Vermont is the Civil Division. See 4 V.S.A. § 31 (defining the jurisdiction of the Civil Division). Thus, Question 1 addresses issues outside the scope of this Court's limited jurisdiction as it seeks to have this Court determine whether actions by the Town are in violation of a contractual agreement between the parties. The Town's motion to dismiss Question 1 is **GRANTED**.

---

[1] Given the unique lengthiness of each of the Appellants' nine Questions, the Court would typically decline to restate each Question in this Entry Order. In this instance, however, the number of issues and arguments raised in each Question requires that the Court to include the entirety of each Question in this Entry Order.

[2] Appellants' reply to the pending motion did not address the substantive issues raised by the Town.

## II.    Questions 2 and 3

Questions 2 and 3 ask:

> 2. It is our understanding that an "ISO container" or "storage container" or "Intermodal Container" is regulated and defined under Federal Law (29 CFR Section 1918.2):

> > "*Intermodal container* means a reusable cargo container of a rigid construction and rectangular configuration; fitted with devices permitting its ready handling, particularly its transfer from one mode of transport to another; so, designed to be readily filled and emptied; intended to contain one or more articles of cargo or bulk commodities for transportation by water and one or more other transport modes. The term includes completely enclosed units, open top units, fractional height units, units incorporating liquid or gas tanks and other variations fitting into the container system. It does not include cylinders, drums, crates, cases, cartons, packages, sacks, unitized loads or any other form of packaging."

> Under Federal Law (49 CFR 171.8):

> > "*Freight container* means a reusable container having a volume of 64 cubic feet or more, designed and constructed to permit being lifted with its contents intact and intended primarily for containment of packages (in unit form) during transportation."

> And

> > "*Intermodal container* means a freight container designed and constructed to permit it to be used interchangeably in two or more modes of transport."

> Under Department of Transportation (Title 49, Chapter 59 §5901):

> > "(4) "container" has the meaning given the term "freight container" by the International Standards Organization in Series 1, Freight Containers, 3d Edition (reference number ISO668–1979(E)), including successive revisions, and similar containers that are used in providing transportation in interstate commerce."

4

Does the State of Vermont, and more specifically the Town of Waitsfield, have the right to redefine a federally and legally defined "vehicle," such as an ISO container, under the jurisdiction of the Department of Transportation to fit the whim of a Zoning Administrator who has taken it upon himself to define this as a "structure"? Does federal law not take precedent over state laws and town ordinances?

3. Since the construction of this container has not been altered and is still viable for transportation via domestic, interstate, and even international commerce, it is our understanding that the jurisdiction for the storage container remains with the Federal Government. Eric Rath (Exhibit 1) first addressed the need to define the growing use of ISO containers throughout international and interstate commerce as early as 1975. (Exhibit 2a) Other States appear to be struggling with the definition of an ISO container as well. It even appears that California (Exhibit 2b) needed to re-define the difference between an ISO container, unaltered from it's certified purpose, as an interstate commerce "vehicle" and that of a modified ISO container being used for a temporary school classroom (housing). As such, one can understand how a zoning administrator may confuse a federally sanctioned definition when a state such as Vermont appears to have no need for a definition of an ISO container in the Vermont State Statutes and has not for the several decades of their use. The closest Vermont State Statutes appear to have in defining an ISO container, which Cornell Law legally defines as "half of a trailer" (Exhibit 3) is that of a "storage trailer" (23 V.S.A. § 4, 61):

> (61) "Storage trailer" means any regularly manufactured box type trailer that has been removed from normal over-the-highway service and is used solely for the storage of commodities at a fixed site for extended periods of time. When a storage trailer is moved over the public highways, it shall not contain cargo weighing more than 2,000 pounds and shall be properly equipped, in good mechanical condition, and inspectable under the provisions of section 1222 of this title, except that storage trailers need not display an inspection sticker."

This, again, places jurisdiction clearly within the Department of Transportation for the State of Vermont. Is an ISO Container not the jurisdiction of the Department of Transportation, so long as it remains unaltered and able to be used for transportation of goods?

Statement of Questions (filed on Aug. 25, 2023).

Questions 2 and 3 are extremely lengthy and filled with factual assertions. The Court interprets these questions to effectively ask whether federal and/or state law addressing various freight and shipping containers preempts the local regulation of the Storage Container. The definitions cited are not relevant in the pending action. First, 29 C.F.R. § 1918.2 addresses the federal Department of Labor's health and safety regulations related to longshoring. Second, 79 C.F.R. § 171.8 addresses federal Department of Transportation regulations related to the shipping of hazardous materials. Third, 49 U.S.C. § 5901 sets forth definitions related to the transportation of various cargo in interstate commerce. Fourth, in Question 3, 23 V.S.A. § 4(61) addresses trailers holding commodities or cargo that will at some point be shipped to another location.

The Storage Container is not used in any of these contexts. Appellants classify their use of the Storage Container as for storage of property on site. Appellants point to no law that would preempt local zoning. Thus, these federal laws are irrelevant in the context of this zoning appeal. Question 2 and 3 are therefore, **DISMISSED** because they fail to state a claim upon which relief can be granted by the Court and the Town's motion to strike is **MOOT**.

### III.    Question 4

Question 4 asks:

> 4. We do, however, recognize that the Zoning Board for a Town does have authority over parking. Fortunately, the parking for our storage trailer or ISO container in question was approved by the Developmental Review Board for the Town of Waitsfield in 2018 (Exhibit 4). Would this not be approval by the town of Waitsfield for the ISO Container as recognized as a "trailer" under the definitions of Cornel[l] Law and the Department of Transportation?

Statement of Questions (filed Aug. 25, 2023).

The Court interprets the thrust of the Question to ask whether there was approval from the Town DRB in 2018 that would authorize the Storage Container and/or its location at the property. This is relevant to the issues before the Court in this NOV appeal such that, to the extent that the Town moves to dismiss Question 4, that motion is **DENIED**.

6

The Question as written, however, is unclear and contains narrative information and argument that is inappropriate for a Statement of Questions. The Court therefore **GRANTS** the Town's motion to clarify Question 4. The Spauldings are ordered to file a clarified Question 4 addressing this narrow issue, in conformance with the Court's below directive.[3]

**IV.    Question 5**

> 5. In Pierce Subdivision Application (In re Pierce Subdivision Application, 965 A.2d 468, 2008 V.T. 100 (Vt. 2008)), the decision essentially states when interpreting the language of a zoning ordinance we are bound by the plain meaning of the words. And since the Zoning ordinance allegedly in violation fails to include ISO Containers as a "structure" despite its listing of "Structures", would this legal principle not render this overzealous enforcement moot? Pursuant to Section 7.02 of the Zoning Bylaws, a "structure" is defined as "An assembly of materials for occupancy or use, including but not limited to a building, a manufactured, mobile home or trailer, sign, storage shelter, wall or fence, except a wall or fence on an operating farm." Does this definition not refer to Trailer "homes", and Manufactured "homes", and have absolutely no reference therein to an ISO Container as a structure by this definition? Especially given the use of the comma in this Bylaw? This is an established issue in law: (Victor, D. (2017). Lack of Oxford comma could cost Maine company millions in overtime dispute. The New York Times. & O'CONNOR v. Oakhurst Dairy, 851 F.3d 69 (1st Cir. 2017).

Statement of Questions (filed on Aug. 25, 2023).

Again, Question 5 contains significant narrative and argument that is inappropriate for a Statement of Questions. The Court does, however, understand that the Question seeks to challenge whether the Storage Container constitutes a "structure" under the relevant zoning bylaws. As written, however, the Question is not clear. The Town argues that the Question can be answered in its favor at this time such that it should be dismissed. While the Town may ultimately prevail on this issue, a motion for summary judgment on the Question is required. The motion to dismiss Question 5 is **DENIED**. The Town's motion to clarify Question 5 is **GRANTED**.

---

[3] Because the Court grants the Town's motion to clarify, and due to the Court's directive on filing clarified Questions, the Town's motion to strike is **MOOT**.

The Spauldings are ordered to file a clarified Question 5 in conformance with the Court's below directive.

## V.    Question 6

Question 6 asks:

> 6. Under the principle that Zoning Ordinances and Bylaws must adhere to rational standards for the enforcement of Welfare, Health, Safety ((Jacobson v. Massachusetts, 197 U.S. 11, 25 S. Ct. 358, 49 L. Ed. 643 (1905) & Thomas Cusack Co. v. Chicago, 242 U.S. 526, 37 S. Ct. 190, 61 L. Ed. 472 (1917)).
>
> At the "appeal trial" the Developmental Review Board (DRB) for the Town of Waitsfield was given ample opportunity to cite such concerns and violations of welfare, health, and safety; and having repeatedly failed to do so, the Zoning Administrator proceeded to fabricate a site visit with a state Fire Marshall. We have evidence that NO Site visit ever occurred as the Town of Waitsfield Zoning Administrator refused to conduct one at our invitation (EXHIBIT 5). Furthermore, there are NO violations of Fire Codes on-site as we DID have a State Fire Marshall on-site at our own invitation. Brice Simon provided evidence directly for the DRB and the Town of Waitsfield through use of screen sharing his personal computer during the entire DRB meeting and attempted to include the concern about "sight lines". No evidence of the requirements for sight lines was included, and no evidence of any measurements being taken was included in this testimony. Sight lines according to (EXHIBIT 6) require 12 feet from the edge of the road to the potentially limiting object. Would not the 13 feet of clearance between the road and the ISO container be sufficient for concerns of Sight Lines? Does having no understanding of the importance of justifying a zoning bylaw or ordinance under the inclusion of welfare, health, and safety demonstrates the DRB's desire to harm our financial wellbeing and attempt to drive us from our property though the intent of bankruptcy by levying an excessive fine? Does Brice Simon's unprecedented access to the DRB's presentation and testimony at the hearing indicate collusion with the Town of Waitsfield to cause us harm?

Statement of Questions (filed on Aug. 25, 2023).

The Court interprets this Question to present two issues. First, it challenges actions taken before the DRB. Second, it challenges the Bylaws' constitutionality.

8

We first address the aspects of this Question that address actions before the DRB. Again, this Court is one of limited jurisdiction. 4 V.S.A. § 34. Further, with limited exceptions not relevant here, we review appeals de novo. 10 V.S.A. § 8504(h). As such, we hear the case "as though no action whatever has been held prior thereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989). Therefore, we generally do not consider the underlying decision of, or proceedings before, the municipal panel below, "rather, we review the application anew as to the specific issues raised in the statement of questions." In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.). We are further limited "to consideration of the matters properly warned as before the local board." In re Maple Tree Place, 156 Vt. 494, 500 (1991). Because of this Court's de novo trial process, allegations of decisionmaker bias or improper procedure on the part of the municipal panel are outside the scope of our review. In re JLD Props. of St. Albans, LLC, 2011 VT 87, ¶ 10, 190 Vt. 259. Simply put, questions related to the procedures before the municipal panel when it was considering the application are outside the scope of this Court's de novo review and must be dismissed. This is because, with limited exceptions that do not appear relevant here based on the Questions presented, procedural missteps before the municipal panel can be corrected before the Court.

To the extent that Question 6 seeks to challenge the sufficiency of evidence before the DRB and/or the procedure before the DRB, such matters are not relevant to the Court's de novo review. The Town's motion to dismiss this aspect of Question 6 is **GRANTED**.

To the extent that Question 6 seeks to challenge the constitutionality of the Bylaws' setback requirements as applied to the Spauldings, such an issue would be within the jurisdiction of this Court.[4] The Question as written, however, is not clear. As such, the Court **GRANTS** the Town's motion to clarify and directs the Spauldings to file an amended Question 6 on this limited issue in conformance with the Court's below directive.

---

[4] The Court notes that it lacks jurisdiction over facial constitutional challenges, which are made on its own, without appealing a specific zoning decision. 24 V.S.A. § 472(b); see e.g. Hinsdale v. Vill. of Essex Junction, 153 Vt. 618, 627 (1990); Littlefield v. Town of Colchester, 150 Vt. 249, 250 (1988). Thus, to the extent that the Spauldings seek to generally challenge the setback requirements as unconstitutional, such a challenge would not be proper in this Court.

### VI. Question 7

Question 7 asks:

> 7. We have also taken issue with the failure to follow proper procedure for the Town of Waitsfield to enforce the alleged violation. Why was due process as specified by Vermont Land Use Rules of Procedure and Ethics Manual Section III: Legal Requirements (p. 2) not followed? Can the Developmental Review Board refuse a site visit when one is requested? Can the Developmental Review Board refuse to provide a list of interested parties when sent a request relating to a court proceeding as the result of their judgement? Can the Zoning Administrator refuse to reissue and alter approved DRB site plans and permits, to add their own personal issue with a storage unit? If this is a "structure", then is not a variance an appropriate mechanism for this situation? And can the Select Board for the Town of Waitsfield not direct or rather grant such a variance? If so, why then did the Select Board refuse to grant this variance and instead sided with the violations of the Zoning Administrator and the DRB members? Why does the Town of Waitsfield sporadically cite some ISO containers and not others? Why is this Bylaw not enforced throughout the town equally by the Town of Waitsfield?

Statement of Question (filed on Aug. 25, 2023).

Question 7 contains many sub-questions addressing different issues. First, to the extent that the Question seeks to challenge the procedure before the DRB, for the reasons set forth above, those issues are outside the scope of the Court's de novo review and must be dismissed. Second, to the extent that the Question addresses whether the Spauldings could be granted a variance, such an issue is similarly outside the scope of the present appeal because there is no application for variance before this Court. See e.g., In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of the [appropriate municipal panel], but it is not broader."). The Town's motion to dismiss these issues is **GRANTED**.

Finally, to the extent that this Question seeks to address whether the Town has selectively enforced its regulations relative to storage containers, such an issue would be proper in this Court. Even so, as written the Question is unclear. The Town's motion to clarify this discrete

aspect of Question 7 is **GRANTED** and the Spauldings are directed to file an amended Question 7 on this narrow issue in conformance with the Court's below directive.[5]

**VII.    Question 8**

Question 8 asks:

> 8. Does a Developmental Review Board not require a complaint to enforce a zoning action? Under Vermont State Statutes, where the zoning bylaws limits fines to $50/day (24 V.S.A. § 3028), is it not a violation of law to attempt to enforce a $200/day fine? If, there is a violation by the town of Waitsfield in enforcing an ordinance that does not define an ISO Container as a "Structure", and / or the fine of $200 dollars per day are found to beyond the scope of the Zoning Administrator's duties, then does this overreach of enforcement not constitution a breach of our Property Rights under the Federal and State Constitutions and our right to property?

Statement of Questions (filed on Aug. 25, 2023).

This Question addresses the process by which the Town has pursued enforcement and the amount of the potential daily fine for the violation. First, Question 8 asks whether the DRB needed to file a complaint to enforce a zoning violation. The process for pursuing enforcement of a zoning violation is set out by statute in 24 V.S.A. §§ 4451 and 4452. The filing of a complaint is not required. Second, Question 8 cites to 24 V.S.A. § 3028 for a $50 maximum per day fine. Section 3028 is not applicable in this case. This matter has been brought pursuant to 25 V.S.A. Chapter 117. See DRB Decision (filed on June 2, 2023) (citing provisions of Chapter 117 regarding appeal processes).[6] Zoning violations brought pursuant to Chapter 117 carry a maximum daily fine of $200 per day. 24 V.S.A. § 4451.

Thus, 24 V.S.A. § 3028 is irrelevant in the context of the pending appeal. Question 8 is, therefore, **DISMISSED** because it fails to state a claim upon which relief can be granted by this Court.

---

[5] [5] Because the Court grants the Town's motion to clarify, and due to the Court's directive on filing clarified Questions, the Town's motion to strike is **MOOT**.

[6] The Town cites to the Waitsfield Zoning Bylaws in its motion, but did not provide a copy of the bylaws as an exhibit to its motion, nor have they been filed with the Court in another manner.

### VIII. Question 9

Due to the length of Question 9, the Court will not restate it here.  Question 9 contains significant background information and argument regarding the laying out of Center Fayston Road and the Town's rights therein and operation thereof.  To the extent that this Question seeks adjudication of any of those issues, that is beyond the jurisdiction of this Court and that aspect of Question 9 is **DISMISSED**.  In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶ 40, 192 Vt. 474 ("[T]he Environmental Division does not have jurisdiction to determine private property rights.").

The Town asserts that the Question could be restated to address the issue of whether Center Fayston Road is a "road" relative to the setback.  The Court struggles to find such an interpretation of Question 9.  There is an aspect of Question 9 that seems to address whether the setback should be imposed at the Property, but as written it is unclear.  To the extent that this Question seeks to address such an issue, the Spauldings are directed to file a clarified Question 9 addressing this issue alone in conformance with the Court's below directive.

### Conclusion

For the forgoing reasons, the Town's motion to dismiss Questions 1 through 3, aspects of 6 that address procedure before the DRB and evidence presented thereto, aspects of 7 that address procedure before the DRB and whether the Spauldings could or should be granted a variance, 8, and aspects of 9 that address the Town's rights in Center Fayston Road and operation thereof, is **GRANTED**.  The Town's motion to clarify Questions 4, 5, aspects of 6 that address the constitutionally of the Town's setback requirements as applied to the Spaudlings, 7, as it relates to selective enforcement by the Town, and the remaining aspects of Question 9 is **GRANTED**.

The Court ORDERS the Spauldings to file a revised Statement of Questions (revised SOQ) for Questions 4, 5, 8 and parts of 6, 7 and 9 addressing the discrete issues not dismissed above.  The revised SOQ must be filed on or before January 31, 2024.

In drafting the revised SOQ, the Court reminds the Spauldings that their revised Questions are to be a "short, concise and plain statement."  Northeast Materials Grp., No. 143-10-12 Vtec, slip op. at 3 (May 9, 2013) (Walsh, J.) (citing V.R.C.P. 8(a)).  This means that their revised Questions should be free of narrative background or argument and only address the discrete questions that

remain before the Court. The Court also Orders that the Spauldings refrain from attaching exhibits to the revised SOQ. The use of exhibits is limited to motion practice and trial. This is when the Court will take evidence related to the revised SOQ.

Lastly, the Town's motion to strike is **MOOT**.

Electronically signed January 18, 2024 in Burlington, Vermont pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division